[ Filed March 5, 1889. ]

# A. C. BILEU, ET AL., RESPONDENT, v. FRANK PAISLEY, APPELLANT.

The rule of the common law, that every man's land was inclosed, either by a material fence or by an ideal invisible boundary, and that every unwarrantable entry thereon by a person or his cattle is a trespass by breaking his close, was not founded on an arbitrary regulation, but was considered as incidental to the ownership. It resulted from the principle that the owner had a right to the enjoyment of his land free from molestation or interference by others, whether its boundary consisted of an artificial structure only in contemplation of law; and the rule need not be adopted, in order to be in force wherever the principles of the common law are extended. It is in force in all places where the right of private dominion over things real is recognized; it attaches to the ownership of property.

The legislature has authority, under the police power of the State, to require every man to inclose his land by a fence built in a prescribed manner, and it may refuse him a remedy for a trespass by cattle entering upon it in consequence of his neglect to comply with such requirements, but it cannot authorize one man to pastu·e his stock upon the land of another, whether fenced or not; it may withhold the remedy, but it cannot grant the right.

The statutes of Oregon, which require fields and inclosures to be inclosed with certain kinds of fence, and provide a remedy in case stock or swine shall break into the same when so fenced, do not apply to ditches constructed across public lands in the State for mining purposes.

Hence the owner of sheep may be held in damages for injuries by reason of the sheep running over the same, in the absence of proof that they were purposely or negligently driven thereon, although the ditches were unfenced.

Where the plaintiffs, in an action to recover damages done to ditches used for mining purposes, in consequence of sheep running over the same, proved that they were engaged in mining, and had been using the ditches in the prosecution of their business during the two previous mining seasons. *Held*, that it was such a possession of the premises as would enable them to maintain trespass against the entry of one having no right.

Whether the manager of sheep, who is not the owner of them, is responsible to a third party or not for any acts of the herders, which are done without his knowledge or authority, and contrary to his directions, depends upon his relations with the owner in regard to the matter.

If he is a mere intermediate agent between the master and the direct agent, he cannot be held constructively responsible for the acts of the latter ; but if he is intrusted with the direct charge and control of the sheep as a bailee, and employed the herders to assist him in the performance of his trust, and they are subject to his control and direction, then he would be so responsible for their acts, done within the scope of their employment, although done without his knowledge or authority, and contrary to his direction.

APPEAL from the circuit court for the county of Crook.

*Geo. W. Barnes* and *S. T. Richardson*, for Respondents.

*Bennett & Wilson*, for Appellant.

THAYER, C. J.—This appeal is from a judgment recovered in an action brought by the respondents in said circuit court against the appellant, to recover damages

done to two certain ditches by the appellant's sheep. The ditches were constructed across the public lands of the United States in said county of Crook, and used for mining purposes. One of them is about four miles long, two feet wide, and three feet in depth; the other one is about one and one-half miles long. The respondents alleged that they owned and were working certain mining grounds, and were owners of and using the ditches for the purpose of conveying water to their mines. They also alleged that the appellant kept, herded, and drove a certain band of sheep, which he owned and controlled, over and across said ditches, whereby they were damaged in the sum of $1,200.

The appellant in his answer denied that the sheep were herded or driven by him upon or across the ditches; denied that he was the owner of the sheep; denied any damages to the respondents whatever; and alleged that the ditches were the property of Tim Baldwin; that they were situated upon the unclaimed Government land of the United States; were uninclosed; and were upon the open public commons of the country. The respondents in their reply denied that the ditches were situated upon unclaimed lands of the United States, or that they belonged to Baldwin, and alleged that they were upon lands claimed by them for mining purposes.

At the trial the respondents gave testimony tending to prove that they had been using the ditches, during the mining seasons, since 1885; but they made no further proof of their ownership of them. The respondents also gave proof tending to show that the four-mile ditch was filled up with rocks, sticks and trash rolled down into it, as sheep would roll down such things on hill sides; that the sheep ran on the ditches for two years; that in going on the ditches for water, they would find them dammed up by sheep, and sometimes find sheep on them, and that the appellant had control of the sheep. The appellant gave testimony tending to show that he did not own the sheep; that they belonged to one McAllister; that appellant had

the general management of them, but was absent most of
the time, and they were left in charge of the camp-tender,
who looked to McAllister for his pay; that appellant
instructed the camp-tender and herders to be careful and
keep the sheep off the ditches.   When the respondents'
evidence was submitted, the appellant's counsel moved for
a non-suit, and renewed his motion again after the evi-
dence in the case was closed; but the court overruled the
motion, and the jury returned a small verdict in favor of
the respondents, upon which the judgment appealed from
was entered.

The issues made by the pleadings were whether the
respondents owned the ditches; whether the appellant
owned the sheep; whether the sheep did damage to the ·
ditches; and whether they were driven upon them by the
appellants, or by his directions.   These were all questions
of fact, and have been determined against the appellant
by the jury; and unless he can show that there was no
evidence to sustain the finding of the jury, he will be con-
cluded thereby.

The counsel for the appellant presents three questions
on the appeal for the consideration of the court:

1.   Whether the owner of sheep can be held in damages
for injuries done by them to an unfenced ditch, running
across the public commons, by reason of the sheep going
on to the same, in the absence of proof that they were
purposely or negligently driven thereon.

2.   Whether the simple fact that the respondents had
been using the ditches in question, without any other proof
of ownership or possession, was sufficient proof of title to
sustain a recovery.

3.   Whether the manager of sheep, who is not the owner
of them, is responsible to a third party for the acts of
the herders, which are done without his knowledge or
authority, and contrary to his directions.

The common law was decisive of the first question.
Blackstone says: "Every unwarrantable entry on another's
soil the law entitles a trespass by breaking his close;

the words of the writ of trespass commanding the defendant to show cause *quare clausum fregit*. For every man's land is, in the eye of the law, inclosed and set apart from his neighbors; and that either by visible and material fence, as one field is divided from another by a hedge; or by an ideal invisible boundary, existing only in contemplation of law, as when one man's land adjoins to another's in the same field. And every such entry or breach of a man's close carries necessarily along with it some damage or other; for, if no other special loss can be assigned, yet still the words of the writ itself specify one general damage, viz., the treading down and bruising his herbage." 3 Comm. *209, *210. Again: "A man is answerable for not only his own trespass, but that of his cattle also; for if, by his negligent keeping, they stray upon the land of another (and much more if he permits or drives them on), and they there tread down his neighbor's herbage, and spoil his corn or his trees, this is a trespass for which the owner must answer in damages; and the law gives the party injured a double remedy in this case. by permitting him to distrain the cattle, thus *damage feasant* or doing damage, till the owner shall make him satisfaction; or else by leaving him to the common remedy *in foro contentioso*, by action." Id. 211. Chief Justice Beardsley in *Railroad Co.* v. *Munger*, 5 Denio, 259, in delivering the opinion of the court, said: "Every unwarrantable entry by a person or his cattle on the land of another is a trespass, and that whether the land be inclosed or not." Citing *Wells* v. *Howell*, 19 Johns. 385; 1 Chit. Pl. 94, 95; Brown on Actions at Law, 369. "It is a general rule of the common law that the owner of cattle is bound, at his peril, to keep them off the land of other persons, and he cannot justify or excuse such an entry by showing that the land was unfenced. Fences were designed to keep one's own cattle at home, and not to guard against the intrusion of those belonging to other people." Citing *Gale* v. *W. Easm.* 297; *Rust* v. *Low*, 6 Mass. 94; *Bush* v. *Brainard*, 1 Cow. 79, note.

But counsel for the appellant contends that the rule of

the common law in that respect is not in force in this State, and he cites a number of cases from different States; also *Campbell* v. *Bridwell*, 5 Or. 311, decided in this court, to sustain his position. In the latter case, however, the decision, I have always supposed, was based upon the statute, which requires that all fields and inclosures shall be inclosed by a fence of a certain height, and built in a certain manner. We so held in *French* v. *Cresswell*, 13 Or. 422, 423; 11 Pac. Rep. 62. We inferred that such was the case, as the court, at page 312, states the following: "The only question presented in the argument for the consideration of the court is whether under our statute a person can maintain an action of trespass for injury to grass, herbage, or growing crops, by the cattle of another, without alleging that the premises upon which the trespass is alleged to have been committed were enclosed by a lawful fence." The court did, it is true, announce, in somewhat general terms, that it was its opinion that the common-law rule that every man is required to keep his cattle within his own close, under the penalty of answering in damages for all injuries arising from their running at large, was not in force in this State; but this announcement was made in connection with the following language: "The statute of 1870 is directly in conflict with and repugnant to that rule. * * * The fence law of this State has repealed the common law on this subject (if it ever prevailed here), and substituted on one side the obligation to inclose with a sufficient fence, and on the other the liability to pay damages," etc. The court intimated a doubt as to whether the rule ever did prevail here, but it did not determine as to whether it did or not.

The grounds upon which the decisions in the other States, which hold that said rule was not in force, are predicated upon its inapplicability to the circumstances and conditions of the people thereof; its being inconsistent with their habits, interests, necessities, and understandings, and its unsuitableness to a new country. These grounds seem to me to be more spacious than sound. The

rule was not founded on any arbitrary regulation of the common law, but was an incident to the right of property. It is a part of that principle which allows every man the right to enjoy his property free from molestation or interference by others; it is simply the recognition of a natural right. A person owning and occupying land is not vested with the right to enjoy it upon condition that he inclose it by a palisade strong enough to keep his neighbors and their stock from breaking into and destroying the fruits of his labors. Property is not held in civilized communities by so insecure a tenure; but the law surrounds it by an ideal, invisible palladium, more potent than any mechanical paling that can be constructed. The rule in question did not require to be adopted in order to be in force. It always exists where the right of private dominion over things real is recognized. It pertains to ownership. The legislature, in the exercise of the police power of the State, may, no doubt, require the owners of lands to fence them in a certain manner, and in default thereof to withhold from them a remedy for a trespass committed thereon by animals running at large. In a sparsely-populated section of country, where there are extensive open commons, and stock-raising is an important industry, it might be judicious to adopt such a regulation; but to hold that one man has a right to permit his stock to go upon the lands of another, if not protected by a material inclosure, would be holding, in effect, that a man did not own what belonged to him. The legislature cannot legalize such a trespass. It cannot provide that the cattle of A may lawfully go upon the land of B against the latter's consent, whether his land is fenced or unfenced; though it may, as before suggested, withhold from B a remedy for damages occasioned by such a trespass, if his land is not inclosed in a prescribed manner. Legislation of the character referred to goes only to the remedy, and no attempt to extend it further could be justified.

The legislature of this State has made no provision applicable to premises of the character of those in question.

It has provided by general statute that all fields or inclosures shall be inclosed with certain kinds of fence, and that if any horses, cattle or stock shall break into any inclosure so fenced, or any swine shall break into the same, the owner of such animal shall, for the first trespass, make reparation to the party injured for the true value of the damages he shall sustain; and for every trespass thereafter, double damges; and for the third offense, the party injured may take up such animals, and keep the same at the expense of the owner, and hold them as surety for the expenses of keeping. And it has provided by special statute, applicable to the counties of Wasco and Umatilla, that no action shall be maintained for damages done by any of the equine or bovine kind, upon the premises of another, unless the person seeking such damage shall allege and prove upon the trial thereof that said premises was at the time of the commission of said damage inclosed with a lawful fence, which is prescribed in a subsequent part of the Act. Since the enactment of this latter statute, said county of Crook has been created from territory embraced at that time in the county of Wasco, or Wasco and Umatilla, and it is probably in force in the former county; but if it is, and is applicable to the premises, which include the ditches in question, it cannot affect this case, as it makes no provision in regard to sheep. Nor is it material whether the sheep were purposely or negligently driven upon the ditches, or were suffered by the owner, or the person having them in charge, to escape and go upon the ditches. It was a trespass in either case. The only difference would be that the owners of the ditches might establish malice in one case and not be able to do so in others. The first question, therefore, must be determined against the appellant.

The second and third questions are more easily disposed of. As to the second question, it is sufficient to say that it was not necessary for the respondents, under the circumstances of the case, to prove ownership of the ditches to entitle them to recover in the action. They were engaged in mining, and had been using the ditches in the prosecu-

tion of their business during the mining seasons since 1885. The ditches were evidently constructed for mining purposes, and the respondents clearly had possession of them, which is sufficient title to maintain trespass against the entry of one having no right.  6 Wait, Act. & Def. § 5, p. 65.

The third question, as to whether the manager of sheep who is not the owner of them is responsible to a third party for any acts of the herders, which are done without his knowledge or authority, and contrary to his direction, depends upon his relations with the owner in regard to the matter.    If the manager in such a case were a mere employé of the owner, having only a general supervision over the sheep, the immediate care of which was intrusted to another employé of the owner, then he would not be liable for the acts of the latter, unless done by his direction. "A mere intermediate agent between the master and the direct agent cannot be held constructively responsible for the acts of the latter." *Brown* v. *Lent*, 20 Vt. 529.    But if the manager contracted with the owner to take charge of the sheep, to provide them with pasture and feed for a consideration, and employed the herders to assist him in the affair, and they were subject to his control and direction, the rule would be different.    It would then be the duty of the manager to prevent the sheep from going upon the ditches; and if they did go there, and do damage, either through his neglect or that of his employés, his liability would be the same.    In such a case, the manager would be responsible for the damages the same as the owner would be if he had charge of the sheep himself.    The bare ownership of stock is not necessarily the test of liability for damages done by it to third persons.    If McAllister did not own the sheep, he may have let them to the appellant on shares, as is often done with that kind of stock.    In that case the appellant could consistently testify "that he was not, and never had been, the owner of any sheep in the vicinity of plaintiff's ditches; that he was the general manager of some sheep belonging to A. S. McAllister, of The Dalles, Oregon, that were kept in the vicinity of where the

plaintiffs were mining during the summer seasons of 1885 and 1886; that he had entire control of said sheep as such manager, and could order them taken or herded where he pleased; and that the men would either have to obey his orders or be discharged." The facts stated in the question, and testified to by appellant, are not sufficient to exempt the latter from liability in the premises. They may be true, and he be responsible for the damages. While he was not the owner of the sheep, and never had been, yet he may have stood in the place of the owner, and been just as liable for the damage done by them to the ditches, as though he had been the owner in fact.

The judgment appealed from will therefore be affirmed.

STRAHAN, J., concurring.—The complaint in this action alleges, in substance, that the plaintiffs were the owners of and working certain mining grounds, and were the owners of and used two certain water ditches, in Crook county, Oregon, through which they carried water to their said mines; that one of these ditches was about four miles in length, by three feet wide and two feet deep, and the other one and a half miles long, and that the defendant kept, herded, and drove a certain band of sheep, which he owned and controlled, over and across said ditches, whereby they were damaged in the sum of $1,200. The answer, after denying the material allegations of the complaint, alleged as follows: That at all the times stated in the complaint said ditches were the property of one Tim Baldwin, and that they were situated on the unclaimed Government land of the United States; were uninclosed; but were situated upon the open public commons of the country. The new matter was put in issue by the reply. The trial resulted in a verdict and judgment for the plaintiffs for the sum of $60, from which judgment this appeal is taken.

1. The appellant's counsel did not argue in this court the various exceptions taken during the progress of the trial to the ruling of the court in the admission or exclusion

of evidence. I do not feel called upon to notice or consider them, and they must be deemed abandoned.

2. At the conclusion of the plaintiff's evidence the defendant moved for a nonsuit, for the reason that the plaintiff had not proven a case sufficient to be submitted to a jury. This motion was overruled, and the action of the court thereon is assigned as error; but we are unable to say whether it was error or not, for the reason the bill of exceptions does not purport to set out all the evidence before the jury when the motion was made. To present that question on appeal, the bill of exceptions must set out all of the evidence before the court when the motion was made. The bill of exceptions is silent on this question, and that would preclude our considering it.

3. For the like reason is the defendant's request to the court to charge, in effect, that there was no evidence before the jury that the defendant drove the sheep into or upon the ditches. The bill of exceptions does not purport to contain all the evidence, and therefore, in accordance with the settled practice in this court, never to presume error, we must assume that the court rightly refused the instruction asked, for the reason that there was evidence on that subject.

4. The court, at the defendant's request, instructed the jury, among other things, as follows: "You cannot find for the plaintiff in this case, unless you find from the evidence that the sheep were actually driven upon the ditch by the defendant, or some one in his employ. If the sheep were there by accident, or fed there themselves, without being actually and purposely driven there by the defendant or his employés, you should find for the defendant. Sheep have just as good a right to run upon the range as any other stock, and, if in doing so they do damage to the unfenced premises of another, they [the owner?] cannot be made to respond in damages. If you find from the evidence that the sheep in question strayed or went upon the ditch without being driven there by the defendant or his employés, you should find for the defendant." These

instructions assume the defendant's liability if he intentionally drove the sheep into the ditches, and before the jury could have returned a verdict against him they must have found that he did so. Of course, if he intentionally did any act without authority of law by which he injured the plaintiff's property, he would be liable in damages, whether it was by driving sheep into the ditches, and causing them to choke up with débris, or by obstructing the flow of water by any other means. This is not a case, therefore, where one negligently permits his stock to stray upon the premises of another, and do damages there, within the rule of the common law stated in 2 Black. Comm. *211. I do not, therefore, deem it necessary to consider or decide whether the common law on that subject is in force in this State or not, and that question, so far as I am concerned, is expressly reserved for future consideration, when a case shall arise rendering its decision necessary.

I concur in the affirmance of the judgment, for the reasons herein stated.