Argued May 8, affirmed as modified September 5, 1975

## JACOBSON ET UX, *Appellants, v.* CROWN ZELLERBACH CORPORATION, *Respondent.*

539 P2d 641

*Nicholas D. Zafiratos,* Astoria, argued the cause for appellants. With him on the briefs was Stephen L. Roman, Astoria.

*Paul R. Duden,* Portland, argued the cause for respondent. With him on the brief was Tooze, Kerr, Peterson, Marshall & Shenker, Portland.

HOLMAN, J.

Plaintiffs have a house by the side of the road. Defendant operates logging trucks on that road. Plaintiffs contend the vibrations from defendant's trucks are damaging their house and seek recovery. They secured a jury verdict, but defendant was granted a judgment notwithstanding the verdict and a new trial. Plaintiffs appeal.

After a verdict for plaintiffs, we state the facts in accordance with the evidence most favorable to them. A county road runs very close to plaintiffs' house. The evidence does not indicate the exact distance between the two points, but defendant, in its brief, states it to be approximately 15 feet to 20 feet, and plaintiffs do not take issue with this estimate. Defendant owns timberland located in the mountains behind plaintiffs' property, and, desiring to gain access to it from the county road, it entered into an agreement with plaintiffs for an easement across plaintiffs' land. The easement is only 70 feet in length and joins the county road 200 feet above plaintiffs' house. Defendant's trucks travel over the easement to the county road and then pass plaintiffs' house. Other logging trucks than defendant's also pass plaintiffs' house on the county road, but they are a small minority of the truck traffic. Plaintiffs' house, which sits on top of a bank above the county road, has become damaged by the subsidence of the land upon which it is built. The subsidence is caused by vibrations from the operation of loaded logging trucks during wet weather. Vibrations from the use of both the easement and the county road reach plaintiffs' house.

Plaintiffs pleaded two counts, one seeking to recover on a so-called "nuisance" cause of action, and the other predicated on a provision of the easement agreement with defendant. The trial court sustained

a demurrer to the nuisance count and the case was tried on the easement count with the results set forth above.

■ Plaintiffs contend the trial court erred in sustaining the demurrer to the nuisance count. They do not, however, object on the ground that a demurrer will not lie to an alternative theory of recovery. *Rich v. Tite Knot Pine Mill,* 245 Or 185, 189, 421 P2d 370 (1966). We will treat the demurrer as testing the count even though the proper way to test it is by a motion to strike. *Raymond v. Southern Pacific Co.,* 259 Or 629, 632-33, 488 P2d 460 (1971).

■■ There is no magic in the use of the word "nuisance." It refers to the interest invaded, *i.e.,* one's interest in the use and enjoyment of one's land, but before recovery is allowed, such invasion must be the result of action to which the law attaches responsibility. We so recognize in *Raymond v. Southern Pacific Co., supra* at 634-35:

"Plaintiff is confused by his failure to recognize that 'nuisance' refers to the interest invaded and not to the type of conduct which subjects the actor to liability. Liability for the infliction of a nuisance may arise from an intentional, negligent, or reckless act, or from the operation of an abnormally dangerous activity. An invasion of a right of the kind classed as a nuisance may occur, but, unless the invasion resulted from action to which the law attaches responsibility, there is no liability." (Footnote omitted.)

Having recognized the true source of nuisance liability, it is necessary to decide whether plaintiffs have alleged any conduct on the part of defendant to which the law attaches responsibility. Plaintiffs have alleged as follows:

"That the Defendant has operated said heavily loaded log trucks upon said easement and upon said County road and has caused vibrations of Plain-

tiffs' said premises, thereby substantially interfering with Plaintiffs' reasonable use and enjoyment of said premises * * *."

"* * * * *.

"That after discovering said damage and ascertaining the cause, Plaintiffs notified Defendant, but that Defendant has continued to operate heavily loaded log trucks on said property and roadways during periods of heavy ground saturation, causing further damage to the improvements upon Plaintiffs' said property; that Defendant has failed and refused to cease and desist hauling heavy loads during said wet periods and has failed and refused to compensate Plaintiffs for the said damage caused to date."

Plaintiffs have alleged that defendant hauled logs knowing that such action was damaging plaintiffs' property. Although plaintiffs have not alleged that defendant's conduct was negligent, reckless, or the subject of any form of strict liability, they have stated facts effectively alleging that it was intentional. "Intentional," as used in this context, means that the act was done with the knowledge that it would result in damage to another, not that it was done for the purpose of perpetrating injury. *Furrer v. Talent Irrigation District,* 258 Or 494, 513, 466 P2d 605 (1971); Restatement of Torts § 825, comment *a.* Therefore, there is a sufficient allegation of intentional injury.

The mere fact that the invasion is intentional, however, does not subject defendant to liability. Plaintiffs must, in addition, allege facts which show that the invasion was unreasonable in the sense that the harm to plaintiffs is greater than they should be required to bear in the circumstances. Normally, this is a question of fact that calls for the weighing of the gravity of the harm against the utility of the defendant's conduct. See Restatement (Second) of Torts

§§ 822, 826-828 (Tent. Draft No. 17, 1971). However, we hold that, as a matter of law, plaintiffs have failed to allege conduct on the part of defendant to which the law attaches responsibility.

■ Plaintiffs have not alleged that defendant was using the public road other than in conformance with the county's regulations. They concede in their brief that defendant's use of the road did not violate any recognized laws or regulations. The question is whether a proper use of the public road that causes harm to an abutting landowner can subject the user to liability for a private nuisance.

■ A county road is dedicated to public use for travel. Defendant, as part of the public, is availing itself of its common right to use the road in conformance with the rules established by the county for such usage. If defendant is to exercise such right at all, it must do so upon the routes selected by the public authorities. *Cf.* Note, *Inverse Condemnation and Nuisance: Alternative Remedies for Airport Noise Damage,* 24 Syracuse L Rev 793, 804 (1973). In this case, the county chose to run the road past plaintiffs' house. If an adjacent landowner could sue any member of the traveling public who puts a burden upon his land by use of the highway in conformance with existing regulations, an intolerable burden would be placed upon public transportation, travel and commerce.

In *Blumenthal v. City of Cheyenne,* 64 Wyo 75, 186 P2d 556, 571-72 (1947), the court, faced with a contention similar to the one addressed here, stated:

"* * * Plaintiffs seek, in effect, to enjoin commercial through truckers from using the streets designated by the ordinance in question, though, it is true, they attempt to do so by indirection. But these truckers travel by a mode which is usual and accepted, and they are free to use the streets

above mentioned. If they can be kept off these streets, it can only be done by a regulation of the municipal authorities which represent the public. Plaintiffs claim in their petition, their argument in this court, and inferentially by their testimony, that such use by the truckers constitutes a nuisance. That contention finds no support whatever in any of the authorities. If, in the absence of the ordinance in question, truckers should voluntarily choose to use the route now designated by the ordinance, the abutting property owners would not, under the foregoing rules, have any remedy whatever. * * *."

*Contra, Shannon v. Missouri Valley Limestone Company,* 255 Iowa 528, 122 NW2d 278 (1963). Plaintiffs cite language from other cases, but we believe such language to be inapplicable to the present situation because of failure to distinquish between private and public nuisances or between use of a public road and of private land. Some cases also fail to demonstrate that the invasion to be actionable must be the result of conduct to which the law attaches responsibility.

■ Unlike situations where preclusion of recovery against a defendant conducting activities on *private* land renders a plaintiff's harm completely uncompensable, a holding that proper use of the public road does not give rise to liability does not in all instances leave a property owner without a remedy. When the government conducts or permits an activity for public purposes upon its land that is sufficiently invasive *to amount to a taking* of adjacent land, an action for inverse condemnation lies against the government. *Thornburg v. Port of Portland,* 233 Or 178, 193-94, 376 P2d 100 (1963). It is our conclusion, however, that public policy dictates that no cause of action lies against an individual member of the public who uses the public way for travel in conformance with the rules laid down therefor.

■ Plaintiffs argue that if defendant is not liable for the damage caused by its use of the public road, it is nevertheless answerable for damage caused by its use of the easement granted by plaintiffs to defendant. The easement agreement permitted defendant to operate its logging trucks over plaintiffs' premises. Now plaintiffs complain that defendant is perpetrating a nuisance for doing that which they agreed to let defendants do, without alleging defendant is operating its trucks in a manner other than that which was contemplated by the agreement between the parties. This does not constitute the statement of a cause of action. This does, however, lead to a consideration of plaintiffs' other count.

■ In their second count, plaintiffs attempt to recover on the basis of an indemnity clause in the easement contract. This is the count upon which plaintiffs recovered their verdict and judgment which were set aside by the trial court. The contract provision in question reads:

> "*INDEMNITY:* Each party hereto, agrees to hold and save harmless and indemnify the other party *from any claim or cause of action* arising from injury, damage, or death arising or growing out of this occupancy hereunder, or use and occupancy of same by an employee, contractor, guest or invitee of either party during the term of this agreement." (Emphasis ours.)

This indemnity clause is similar to the usual one inserted in contracts to protect the parties from claims of third parties. If the parties had intended the clause to apply to damages suffered by one party directly from the activity of the other, the provision would have read "* * * *for* any claim * * *," rather than "* * * *from* any claim * * *." Also, the agreement purports to protect plaintiffs not from damage but from claims or causes of action

which necessarily must be asserted by others. Plaintiffs cite *Peavey Company v. Union Pacific Railroad Company,* 296 F Supp 1399 (D. Or. 1968), in which the court held that a provision containing similar language covered claims by one party to the agreement against the other and not just claims of third parties. In that case, however, other language in the provision showed that it was so intended. Plaintiffs further contend the provision is ambiguous and therefore should be construed against defendant, who drew the contract. We see no ambiguity.

The judgment of the trial court granting defendant a judgment notwithstanding the verdict is affirmed. There is no necessity for a new trial.