Argued and submitted June 14, affirmed September 25, reconsideration denied November 27, 1991, petition for review allowed February 25, 1992 (312 Or 676)

## HUFFMAN AND WRIGHT LOGGING CO.,
*Respondent,*

*v.*

Valeri J. WADE,
Michele D. Miller, Karen V. Wood,
Kelpie J. Wilson, Kamala Redd
and James R. Jackson,
*Appellants.*

(L87-2850; CA A61324)

817 P2d 1334

David E. Atkin, Eugene, argued the cause and filed the briefs for appellants.

Mark C. Rutzick, Portland, argued the cause for respondent. With him on the brief were Cynthia L. Hull and Preston, Thorgrimson, Shidler, Gates & Ellis, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendants appeal a judgment that awards compensatory and punitive damages to plaintiff. They assign as error[1] the trial court's failure to grant their motions[2] regarding the punitive damages award and to sustain their objections to plaintiff's questions, evidence and arguments about the beliefs of their group. We affirm.

Plaintiff is a private logging corporation. Defendants are members of the environmental group, "Earth First!." In July, 1987, defendants participated in a demonstration on a U.S. Forest Service logging road in the North Kalmiopsis area of the Siskiyou National Forest to protest the Forest Service's policies regarding the area. During the demonstration, five of the defendants climbed on and chained themselves to plaintiff's logging equipment. The sixth defendant climbed to the top of a yarder and hung a large banner that read, "FROM HERITAGE TO SAWDUST - EARTH FIRST!." It depicted two trees being converted into sawdust. Defendants did not have permission to be on plaintiff's property. While they were attached to the equipment, they made statements, sang songs and chanted slogans regarding their beliefs about the need for greater environmental protection of the North Kalmiopsis area.

As a result of defendants' actions, part of plaintiff's logging operation was shut down for most of the day. Defendants testified that their actions were justified, because "[w]ithout the nonviolent civil disobedience element of the

---

[1] We note that defendants' first assignment of error does not comport with ORAP 5.45(4):

"Each assignment of error shall be clearly and concisely stated *under a separate and appropriate heading,* must be specific and must set out verbatim the pertinent portions of the record, if it relates to a specific ruling that is being challenged." (Emphasis supplied.)

Under the rule, defendants should have addressed each order under a separate heading. However, because the arguments in support of the motion underlying each of the orders are the same, we will consider the assignment of error.

[2] Defendants assign error to the denial of their motions for summary judgment, ORCP 47, directed verdict, ORCP 60, and judgment notwithstanding the verdict. ORCP 63. The denial of the motion for judgment notwithstanding the verdict is not reviewable. The denial of a motion for summary judgment is reviewable when, as here, the motion presents a pure legal question. *Payless Drug Stores v. Brown,* 300 Or 243, 708 P2d 1143 (1985); *Heidtke v. Int'l Brotherhood of Boilermakers,* 104 Or App 473, 801 P2d 899 (1990).

demonstration, the event would not have been considered 'newsworthy' by the press, and so likely would not have brought the issue to the attention of the public or of elected or appointed officials." The demonstration was widely publicized.

Later the same day, the Curry County Sheriff's Department removed defendants from the equipment and arrested them. Defendants peaceably submitted to arrest. They were charged with and convicted of third degree criminal mischief, ORS 164.345, and served two weeks in the Curry County Jail. They also were each ordered to pay a $250 fine and to make full restitution to the sheriff's department and to plaintiff for its down time.

Plaintiff filed a civil action against defendants, alleged that they had committed a trespass and sought $7,818.26 compensatory damages and $50,000 punitive damages. Defendants conceded liability for compensatory damages and asserted as an affirmative defense that their actions were not subject to the imposition of punitive damages because of the Oregon and United States constitutional guarantees of the freedom of expression and the freedom to petition the government. Or Const Art I, §§ 8, 26; US Const, Amends I, XIV. They moved for partial summary judgment and, later, a directed verdict on the punitive damages issue. The court denied both motions. The jury awarded plaintiff $5,717.34 compensatory damages and $25,000 punitive damages. Defendants moved for judgment notwithstanding the verdict, which was also denied.

Defendants argue that Article I, section 8,[3] of the Oregon Constitution prohibits the imposition of punitive damages for their conduct, because it was expressive conduct. They rely on *Hall v. The May Dept. Stores,* 292 Or 131, 637 P2d 126 (1984), and *Wheeler v. Green,* 286 Or 99, 593 P2d 777 (1979), which both held that punitive damages may not be awarded for injuries that arise solely as a result of the abuse of the right to free expression under Article I, section 8. In the

---

[3] Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

trial court, therefore, they made no attempt to segregate their expressive conduct from the non-expressive trespasses and did not request an instruction limiting the jury's consideration to non-expressive conduct insofar as punitive damages were involved. *See Lewis v. Oregon Beauty Supply Co.,* 302 Or 616, 629, 733 P2d 430 (1987). They argued that the issue of punitive damages should have been removed from the jury's consideration altogether.

We limit our review to the argument made below. Plaintiff asserts that, because defendants "did much more than speak or express their opinions," section 8 does not prohibit the award of punitive damages in this case. In *Wheeler v. Green, supra,* the court said, regarding an action for defamation:

> "In the sensitive area of free expression, * * * the threat of large damage recoveries can easily inhibit the exercise of constitutionally protected expression, as well as its abuse. This is likely to be particularly true in Oregon where the courts having no power of remittitur, have little or no control over the amounts which juries award as punitive damages." 286 Or at 119. (Footnotes omitted.)

Under *Wheeler,* therefore, if defendants' conduct was protected conduct, punitive damages could not be awarded.

In *State v. Robertson,* 293 Or 402, 412, 649 P2d 569 (1982), the court said:

> "Article I, section 8, * * * forbids lawmakers to pass any law 'restraining the free expression of opinion or restricting the right to speak, write or print freely on any subject whatever,' beyond providing a remedy for any person injured by the 'abuse' of this right. This forecloses the enactment of any law written in terms directed to the substance of any 'opinion' or any 'subject' of communication, unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach."

In other words, a law violates section 8 if, on its face, it restrains the "free expression of opinion or restrict[s] the right to speak" on any subject *and* prohibits a kind of expression that was not prohibited before 1859. *See, e.g., State v.*

*Moyle,* 299 Or 691, 696, 705 P2d 740 (1985); *State v. Grimes,* 85 Or App 159, 162, 735 P2d 1277, *rev den* 304 Or 56 (1987). Section 8 protects speech from intrusion by any branch of government, including the judiciary and the judge-made doctrine of punitive damages.[4] *Lloyd Corporation v. Whiffen,* 307 Or 674, 680, 773 P2d 1294 (1989); *see also In re Fadeley,* 310 Or 548, 574, 802 P2d 31 (1990) (Unis, J., concurring in part; dissenting in part). We apply those tests to the doctrine of punitive damages as it relates to defendants' conduct.

■ In the complaint, plaintiff alleged that defendants committed a trespass by "intentionally and wrongfully interfering with and depriving [it] of the use and possession of [its] logging equipment * * *." Unlike in *Wheeler v. Green, supra,* or *Hall v. The May Dept. Stores, supra,* where the allegedly tortious conduct was the content of the speech or the expression of opinion, the focus of the claim for punitive damages was on the harm arising from the physical trespass. The award of punitive damages does not restrict the right to speak or chill the expression of opinion, because the complaint is directed against only non-protected tortious conduct even though the conduct is accompanied by speech. Moreover, we are unaware of, and defendants do not point to, any pre-1859 law that protected a trespass to chattels if it also involved expressive activities. *See, generally, Statutes of Oregon 1855* (1855). We conclude that the award of punitive damages does not violate Article I, section 8.

■ Defendants next assert that the punitive damages award violates their right to free expression under the First and Fourteenth Amendments. In particular, they argue that, because they were engaged in symbolic conduct, the punitive damages award

> "violates[s] the requirement that the government use the least restrictive alternative when limiting *First Amendment freedoms* [as] established by the U.S. Supreme Court in *United States v. O'Brien,* 391 US 367, 88 S Ct 1673, 20 L Ed 2d 672 (1968)." (Emphasis supplied.)

---

[4] The doctrine of punitive damages first appeared around the middle of the Eighteenth Century. Hodel, "The Doctrine of Exemplary Damages in Oregon," 44 Or Law Rev 175, 177 (1965). In *Day v. Holland,* 15 Or 464, 15 P 855 (1887), the Oregon Supreme Court held that punitive damages are available for an aggravated and malicious trespass.

They also argue that, under the First Amendment, plaintiff's private property rights must give way to their right to free expression. They refer to "a long line of cases" in support of that argument: *Marsh v. Alabama,* 326 US 501, 66 S Ct 276, 90 L Ed 265 (1946); *Amalgamated Food Employees v. Logan Valley Plaza,* 391 US 308, 88 S Ct 1601, 20 L Ed 2d 603 (1968); *Lloyd Corp. v. Tanner,* 407 US 551, 92 S Ct 2219, 33 L Ed 2d 131 (1972); and *PruneYard Shopping Center v. Robbins,* 447 US 74, 100 S Ct 2035, 64 L Ed 2d 741 (1980).

The answer to both of defendants' arguments depends on whether they had a right to use plaintiff's property for their expressive purposes. The "long line of cases" to which they refer does not support their argument. First, in *Lloyd Corp. v. Tanner, supra,* the Court held that the First and Fourteenth Amendments did not afford anti-war activists the right to distribute anti-war literature in a private shopping center. That holding runs contrary to defendants' position. Second, we reject their reliance on *Amalgamated Food Employees v. Logan Valley Plaza, supra,* because it was repudiated in *Lloyd Corp. v. Tanner, supra,* and was overruled by *Hudgeons v. NLRB,* 424 US 507, 96 S Ct 1029, 47 L Ed 2d 196 (1976). Finally, we reject defendants' characterization of *Marsh, Logan Valley Plaza* and *PruneYard* as affording a general right to engage in expressive activities on private property.

The First Amendment does not afford individuals who wish to express their opinions "a constitutional right to do so whenever and however and whenever they please." *See Greer v. Spock,* 424 US 828, 836, 96 S Ct 1211, 47 L Ed 2d 505 (1976), *quoting Adderly v. Florida,* 385 US 39, 48, 87 S Ct 242, 17 L Ed 2d 149 (1966); *see also Cox v. Louisiana,* 379 US 559, 578, 85 S Ct 476, 13 L Ed 2d 487 (1965).[5] As the Court said in *Central Hardware Co. v. NLRB,* 407 US 539, 547, 92 S Ct 2238, 33 L Ed 2d 122 (1972), before an owner of private property can be subjected to the commands of the First and Fourteenth Amendments, the property must "assume to

---

[5] In *Cox,* Justice Black said:

"The First and Fourteenth Amendments, I think, take away from government, state and federal, all powers to restrict freedom of speech, press and assembly, *where people have a right to be for such purposes.*" 379 US at 578. (Black, J., concurring; emphasis in original.)

some significant degree the functional attributes of public property devoted to public use." Private property may be held to be "devoted to public use" if, at a minimum, the owner has invited the general public to enter the premises. *See Marsh v. Alabama, supra; see also PruneYard Shopping Center v. Robbins, supra; Greer v. Spock, supra; Lloyd Corp. v. Tanner, supra; Adderly v. Florida, supra.*

There is no evidence[6] here that plaintiff ever invited members of the public to climb on or chain themselves to its equipment or that the equipment was ever "devoted to public use." Therefore, the public and defendants were not entitled to use plaintiff's property for their expressive purposes. It follows that the award of punitive damages did not impinge on their rights under the First and Fourteenth Amendments.

■ Defendants also assert that the imposition of punitive damages violates their right to petition the government. Or Const Art. I, § 26;[7] US Const, Amend I, XIV. That assertion fails. Nothing prevented defendants from expressing their disagreement with the government's policies through other means. Further, on this record, the rights secured by Article I, section 26, and the First and Fourteenth Amendments do not include the right to use plaintiff's property against its will.

■ Defendants next assign error to the trial court's failure to sustain their objections to testimony regarding the activities and philosophy of "Earth First!" to the effect that the group generally, and its founder in particular, believe that activities such as tree and road spiking and vandalizing industrial equipment are justifiable means to protect forests. Defendants argue that the testimony is irrelevant and unfairly prejudicial. OEC 402; OEC 403. Plaintiff argues:

---

[6] In *State v. Cargill,* 100 Or App 336, 786 P2d 208 (1989), *rev allowed* 310 Or 133 (1990), we held that, because a shopping center had invited the general public to enter its premises, the constitutional right to seek signatures for initiative petitions barred a prosecution for trespass. The holding in *Cargill* is inapposite to the facts in this case, because plaintiff did not invite the public to use its equipment.

[7] Article I, section 26, provides:

"No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good; nor from instructing their Representatives; nor from applying to the Legislature for redress of greviances (sic)."

"All issues of liability were resolved before trial, and trial proceeded on the issue of damages only. Plaintiff claimed entitlement to both compensatory and punitive damages. One purpose of punitive damages is to deter the defendants and others from engaging in the complained activity again.

"The line of questioning to which defendants have objected at length goes to defendants' acceptance of a philosophy that advocates * * * acts ranging from defendants' actions here (chaining themselves to plaintiff's logging equipment) to more serious behavior such as tree spiking and sabotaging industrial equipment. Plaintiff's line of questioning was probative on the issue of defendants' propensity to repeat their actions."

On that basis, plaintiff contends that the testimony was relevant and that trial court properly balanced the probative value of the evidence against its prejudicial effect. We agree that the court did not abuse its discretion in overruling defendants' objections. *See Carter v. Moberly,* 263 Or 193, 501 P2d 1276 (1972).

Defendants also argue that plaintiff's counsel's use of a 12-inch metal spike during closing arguments was prejudicial error, because it had not been admitted in evidence. However, they did not make an objection to plaintiff's evidence, and we will not consider it. ORAP 5.45(2).

Affirmed.