Argued and submitted March 8, reversed and remanded in part; otherwise affirmed June 16, Advocates for Life's petition for reconsideration and Deparrie's petition for reconsideration denied September 15, both petitions for review denied November 30, 1993 (318 Or 97, 98)

## LOVEJOY SPECIALTY HOSPITAL, INC.,
an Oregon corporation,
*Respondent,*

*v.*

## The ADVOCATES FOR LIFE, INC.,
an Oregon nonprofit corporation;
Randy Craig Alcorn; Maria Bludworth;
Andrew A. Burnett; Brian W. Clowes;
Kathleen K. Clowes; Julius Gabriel Depaepe;
Paul C. Deparrie; Robert Fulton Ekstrom;
Gene Austin Fitzgerald; Cathy Gorsline;
Judy L. Hager; Sean Robert Hahn; Marion Hite;
Barbara Hurley; Kurt Robert Lantz;
Robert William Morton; Norman R. Norquist;
Catherine Ramey; Ron Rohman; John Robert Snyder;
Steve Spinnett; Dawn M. Stover; Jeffrey W. Strong;
Philip Tussing; James Marshall Tuttle;
Stephen Vanhoff and Linda Waldrip,
*Appellants,*

*and*

## OPERATION RESCUE, INC.,
a New York nonprofit corporation;
Rosemarie M. Belezos; Russell David Devoss;
Judith Anne Quiring; Howard Baker Romano;
Rachelle R. Shannon; Roger Shipman;
Linda J. Wolfe; Franklin L. Hicks;
Pricilla J. Martin; James J. Miller;
Kathleen M. Stewart; James D. Dodson;
James D. Fellows; Robert H. Fowler;
Kimberly Ann Gorsline; Kevin E. McMorrow;
Larry Joseph Prantl; Margaret Mary Rainboldt
and Lisa J. Maloney,
*Defendants.*

(A8907-03773; CA A69120)

855 P2d 159

William D. Bailey, Portland, argued the cause for appellants. With him on the briefs was Bailey & Wolfe, Portland.

Jeff Bennett, Portland, argued the case for respondent. On the brief were Arthur L. Tarlow and Bolliger, Hampton & Tarlow, Portland.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

RIGGS, J.

Durham, J., concurring.

**RIGGS, J.**

Defendants appeal a judgment that awarded plaintiff compensatory and punitive damages, and also attorney fees. Three of the defendants, who defaulted, appeal the denial of their motion to set aside a separate judgment under ORCP 71. We reverse and remand the award of attorney fees, and otherwise affirm.

Defendants are 27 individuals and a non-profit corporation who oppose abortion. Beginning in 1984, some defendants began picketing plaintiff, a clinic that provides medical services, including abortion. In 1986, defendants began blocking plaintiff's doors and trespassing on the parking lot and private property surrounding plaintiff's building. Property damage, lost business and incidents of pushing and other physical contact accompanied the protests.

Plaintiff brought an action for injunctive relief, trespass and nuisance, seeking punitive damages of $250,000 on each of the trespass and nuisance claims, compensatory damages of $6,160.43 for property damage and additional security expenses, and nominal damages for trespass and nuisance. The court entered a preliminary injunction enjoining defendants from entering plaintiff's property, demonstrating within a specified "keep-clear" area or blocking plaintiff's doors. Eighteen defendants violated the injunction and were found in contempt. A trial on plaintiff's claims followed.

The court directed a verdict for plaintiff on the trespass and nuisance claims. That verdict is not challenged on appeal. The jury found that 21 of the defendants were each liable for a total of $1 in nominal damages and $200,000 in punitive damages on each of the nuisance and trespass claims. The remaining four defendants who appeared were each found liable for $4,485.43 in nuisance damages, $1 in nominal damages for trespass and a total of $500,000 in punitive damages on the nuisance and trespass claims. A judgment for $504,486.43 was entered against three defendants who defaulted. Citing ORS 20.105, the trial court entered judgment for plaintiff's entire litigation expense against the 18 defendants who had violated the injunction.

Defendants who appeared make five assignments of error. They first assign error to the denial of their "motion for

a directed verdict seeking the withdrawal of plaintiff's claims for punitive damages." Although defendants characterize that motion as a motion for a directed verdict, it was actually a motion to withdraw punitive damages from the jury's consideration, and we treat it as such. In a related assignment, they argue that the trial court erred when it gave a jury instruction on punitive damages. Defendants do not object to the wording of the instruction, but rather that a punitive damage instruction was given at all. In a third and also related assignment of error, defendants argue that the trial court erred by refusing their requested instruction that punitive damages could only be awarded for conduct that is not intended to be expressive.

All three assignments are premised on the argument that Article I, section 8, of the Oregon Constitution and the First Amendment to the United States Constitution prohibit an award of punitive damages for tortious, but expressive, activity. Because they are related, we combine these three assignments for purposes of analysis. We review the trial court's rulings for errors of law.

■■■ Article I, section 8, of the Oregon Constitution prohibits assessment of punitive damages for torts resulting from an abuse of speech. *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 733 P2d 430 (1987). Defendants assume, without explanation, that nuisance and trespass are "expressive activities" entitled to the same protection as speech. Even if we agree that some of defendants' conduct was expressive, that conduct is not necessarily protected. Under *Huffman and Wright Logging v. Wade*, 109 Or App 37, 42, 817 P2d 1334 (1991), *rev allowed* 312 Or 676 (1992), a trespass claim can support punitive damages if the claim focuses on harm stemming from a physical trespass, and not on the content of the speech or expressive conduct that accompanied it. In this case, the court properly instructed the jury that

> "[t]he defendants have a constitutional right to oppose abortion and to try and convince others to oppose abortion and to persuade women not to have abortions. This also includes the right to picket and to demonstrate on public property in a peaceful, non-violent manner."

Plaintiff's claim for punitive damages was not based on the content of defendant's speech or expressive conduct, but was based on harm caused by physical acts. Under *Huffman,*

those physical acts do not merit Article I, section 8 protection simply because they are accompanied by speech or expressive conduct.

Defendants attempt to distinguish *Huffman* on the ground that the defendants in that case did not request a jury instruction limiting the jury's consideration of punitive damages to non-expressive conduct. The failure of the defendants in *Huffman* to request that instruction meant that we could not consider whether the jury considered the content of the defendant's speech when it assessed punitive damages. The defendants in *Huffman* also failed to segregate the expressive and non-expressive aspects of their speech, making review of the punitive damages for infringement of their Article I, section 8 rights difficult.

■ Defendants in this case did not properly request an instruction limiting the jury's consideration of punitive damages to the non-expressive aspects of their conduct. Defendants' requested instruction included a statement that "punitive damages may only be awarded against a defendant for conduct which is not intended to communicate." This is an incorrect statement of the law. As we held in *Huffman*, communicative conduct can support punitive damages if those damages are assessed against the non-protected tortious aspect of the conduct and not against its expressive aspect. 109 Or App at 42. As was the case in *Huffman*, defendants failed to segregate the expressive and the non-expressive aspects of their conduct.

On the basis of *Huffman*, we conclude that neither the denial of the motion to withdraw, nor the jury instruction on punitive damages nor the refusal to give defendants' requested jury instruction violated Article I, section 8.

■ Defendants next argue that the First Amendment prohibits the imposition of punitive damages for expressive conduct. Conduct has sufficient expressive elements to implicate the First Amendment if there is an intent to convey a particularized message and the likelihood is great that the message will be understood by those who view it. *Texas v. Johnson*, 491 US 397, 404, 109 S Ct 2533, 105 L Ed 2d 342 (1989). Although defendants do not isolate which of their

activities were expressive, we assume for the sake of argument that some of their conduct was expressive under *Johnson*.

■     The government has a freer hand in restricting expressive conduct than it has in restricting speech. *Texas v. Johnson, supra*, 491 US at 406. Where expressive and non-expressive elements are combined in the same course of conduct, the conduct can be regulated if a sufficiently important governmental interest justifies an incidental limitation on First Amendment freedoms. The governmental interest must be unrelated to the suppression of free expression.

■     Here, state law permits imposition of punitive damages for conduct that combines expressive and non-expressive elements. In this case, punitive damages serve a fundamental, indeed primal, governmental interest in discouraging repeated trespasses and nuisances on private property that result in property damage, economic loss and violence.[1] Unlike the law in *Johnson*, which prohibited the burning of the American flag if that act was performed as political speech, the Oregon laws permitting punitive damages for trespass and nuisance prohibit certain acts regardless of their expressive features.[2] The government interest in protecting a landowner's interest is unrelated to speech. Consequently, the impact on protected speech is incidental. We conclude that Oregon's authorization of punitive damages for conduct with expressive elements does not violate the First Amendment. The trial court's rulings on the motion to withdraw punitive damages and the rulings on jury instructions were not erroneous.

---

[1] In *Bileu v. Paisley*, 18 Or 47, 52, 21 P 934 (1889), the Oregon Supreme Court described as a natural right, the right of people to enjoy their property free from molestation or interference. We note that the first legal writings in the Anglo-American tradition demonstrate a strong governmental interest in protecting the rights of property owners to be free from injurious trespass and nuisance. *See, e.g.*, The Laws of Alfred § 40 (10th century) (prohibiting trespass).

[2] Trespass is the unauthorized entry onto land in the exclusive legal possession of another. *Martin v. Union Pacific Railroad*, 256 Or 563, 474 P2d 739 (1970). Nuisance is the unreasonable infringement of a person's interest in the use and enjoyment of his or her land. *Jacobsen v. Crown Zellerbach*, 273 Or 15, 18, 539 P2d 641 (1975). Punitive damages are available when there is an intentional disregard of the landowner's rights. *Senn v. Bunick*, 40 Or App 33, 594 P2d 837, *rev den* 287 Or 149 (1979).

Defendants next assign error to submission of a verdict form that permitted the jury to award punitive damages of $250,000 per defendant on each of the two tort claims. Defendants also assign error to jury instructions that permitted a maximum punitive damage award of $250,000 per defendant. Defendants contend that the complaint prayed for no more than a total of $500,000 for all defendants. Therefore, they argue, the verdict form and the jury instructions awarded damages that exceeded those prayed for. We consider both assignments together.

■ Pleadings must specify the amount of money damages the party seeks. ORCP 18B(2). A verdict must not exceed the amount alleged and prayed for in the complaint. *Wiebe v. Seely, Administrator*, 215 Or 331, 357, 335 P2d 379 (1959). Disposition of these two assignments of error depends on the wording of the final complaint. Defendants state that the first sentence of the prayer in plaintiff's complaint reads:

"WHEREFORE, plaintiff prays for judgment jointly and severally against all defendants as follows:"

This language arguably supports defendants' position. However, on the day of trial, the trial court permitted plaintiff to amend its complaint. One of the amendments struck the phrase "jointly and severally" from the first sentence of the prayer. After the amendments, the only prayer for joint and several damages against all defendants was one for $7,083.43 in actual damages for nuisance. There was no error in the jury instructions or the verdict form.

■ Defendants who were held in contempt assign error to the award of attorney fees and costs. The trial court awarded plaintiff all its attorney fees and costs under ORS 20.105, which permits an award of attorney fees to the prevailing party against whom a defense is presented if the defending party willfully disobeyed a court order. A trial court's decision to award all, part or none of the attorney's fees authorized by statute is reviewed for abuse of discretion. Whether the fees were authorized by statute is reviewed as a question of law.

In its award of attorney fees, the trial court found that

"it is unlikely that there would be any reasonable way to accurately separate those fees attributable, for example,

solely to the contemnors and solely to matters related to the contempts, and in any case I exercise my discretion under ORS 20.105 not to require any such separation but to award all fees.''

Defendants who were held in contempt argue that a court has no discretion to award fees unrelated to the contempt proceeding and that the fees attributable to the contempt proceeding could be segregated from the expenses for the nuisance and trespass litigation.

No cases directly address whether ORS 20.105 permits an award of a party's entire attorney fee whenever a court order has been disobeyed. However, this question has received uniform treatment under the more than 100 statutes authorizing attorneys fees in particular cases. All of the analogous cases that we have reviewed require separation of authorized and non-authorized fees.[3] Absent statutory language to the contrary, we see no reason to depart from the general rule that authorized and unauthorized fees must be apportioned. The court did not expressly find that it was impossible to apportion fees. Indeed plaintiff's detailed billing statements suggest otherwise. The trial court erred in awarding plaintiff's total attorney fees and costs, and we remand for apportionment.

The final assignment of error concerns the judgment for $504,486.43 entered against each of three defendants who defaulted. Because they defaulted before service of the fourth (and final) amended complaint, those three defendants were named in a separate money judgment. After the jury assessed punitive damages of $200,000 against most defendants, the court said in a colloquy that it would award the same amount against the three defaulted defendants. However, it later

---

[3] In *Greb v. Murray*, 102 Or App 573, 576, 795 P2d 1087 (1990), we held that fees must be apportioned between fees authorized by a contract provision and fees not so authorized. In reaching this conclusion, *Greb* relied on *Sunset Fuel and Engineering v. Compton*, 97 Or App 244, 775 P2d 901, *rev den* 308 Or 466 (1989) (attorney fees authorized by a lease) and *Estate of Wesley E. Smith v. Ware*, 307 Or 478, 769 P2d 773 (1989) (attorney fees for unlawful trade practices under ORS 646.638(3)). In a case where we held that it was error not to apportion fees between a civil rights claim for which fees were authorized and contract claims, for which fees were not authorized, we relied on the language of *Greb* as a statement of general applicability. *Nelson v. Emerald People's Utility Dist.*, 116 Or App 366, 376, 840 P2d 1384 (1992), *rev allowed* 316 Or 527 (1993).

awarded the full prayer of $500,00 in punitive damages against the three defaulted defendants.

Because three defaulted defendants mistakenly appealed the first judgment, which covered only defendants who appeared, they asked us to include them in the first judgment or to set aside the second judgment. That relief was denied. Two months after we denied relief, and 10 months after the second judgment had been entered, the defaulted defendants moved, in the trial court, to set aside the second judgment under ORCP 71. The grounds for relief urged were (1) clerical error and inadvertence on the part of the court, (2) surprise, mistake, inadvertence and excusable neglect on the part of the three defaulted defendants, and (3) misrepresentation on the part of plaintiff. ORCP 71B(1).

The trial court rejected each ground for relief urged. Additionally, the court held that the motion was not made within a reasonable time. ORCP 71B. With regard to the untimeliness of the motion, the trial court said that

"[the defaulting] defendants' failure to bring their motions within a reasonable time creates difficulties with regard to reconstructing the sequence of events and the state of mind of the court and the parties with regard to arguments now made by defendants."

We will not reverse a trial court's denial of a motion for relief from judgment absent a manifest abuse of discretion. *Blue Horse v. Sisters of Providence*, 113 Or App 82, 85, 830 P2d 611, *rev den* 314 Or 727 (1992). In *Blue Horse*, the trial court did not abuse its discretion when it denied a motion to set aside a judgment. The plaintiff in *Blue Horse* did not explain why a miscommunication with her attorney and a subsequent failure to appear at a hearing constituted excusable neglect. In this case, defendants never explain why they waited 10 months to have the judgment set aside. ORCP 71B permits a party to appeal simultaneously to this court and move to set aside a judgment in the trial court. Defendants chose to appeal first and, when that appeal was denied, to wait another two months to move to have the judgment set aside. We cannot say that the trial court abused its discretion when denying defendants' motion because it was untimely.

Award of attorney fees reversed and remanded; otherwise affirmed.

**DURHAM, J.,** concurring.

Although I join in the majority's result, I do not agree with the majority's categorical statement that expressive conduct can be punished through an award of punitive damages, consistent with Article I, section 8, if

> "those damages are assessed against the non-protected tortious aspect of the conduct and not against its expressive aspect." 121 Or App at 165.

It is beyond dispute that those who trespass on another's property and cause damage cannot avoid responsibility for the injury by claiming that the tort was motivated by a desire to speak, or that communication occurred during the trespass. Whether or not trespassing falls within the rubric of an "abuse" of the freedom of speech, for which the entrant is responsible by the terms of Article I, section 8, the victim has a right under Article I, section 10, to initiate proceedings to recover compensation for harm done to the victim's interest in "property."[1]

However, an award of punitive damages in this context raises special problems. Such damages do not compensate for loss but punish the entrant and warn others not to engage in similar conduct. *Roshak v. Leathers,* 277 Or 207, 211, 560 P2d 275 (1977) says:

> "For many years it has been recognized in this state that '[t]he generally accepted doctrine [of punitive damages] is that such damages are awarded by way of punishment to the offender and as a warning to others, or, according to some authorities, by way of example.' *Martin v. Cambas,* 134 Or 257, 261, 293 P 601 (1930)."

---

[1] Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Article I, section 10, provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

I question the validity of a "law," in the form of a punitive damages judgment, that is intended to warn the community against repeating a tort that has occurred in the context of a political demonstration. Standing alone, a judgment for punitive damages does not inform the community whether the jury saw fit to punish all or only some of what may be an array of actions by demonstrators. The pleadings, jury instructions and evidence from a court trial may shed some light on the behavior that the jury sought to punish, but they rarely will guide the behavior of the organizers and participants in future demonstrations that vary in location, format and message. For example, the detail that the court's instructions in this case correctly distinguished defendants' unprotected tortious conduct from their protected expressive conduct will probably be lost on demonstrators who, years from now, may wish to express themselves, through conduct, to the full extent allowed by law on electoral politics, labor disputes, the environment or other controversies. To those citizens, the threat of a large punitive damage award could chill their enthusiasm not only for "unprotected tortious conduct," whatever that might be, but also for constitutionally protected speech.

Similar considerations led the Supreme Court in *Wheeler v. Green*, 286 Or 99, 119, 593 P2d 777 (1979), to hold:

"We are convinced by these considerations that a proper application of Article I, § 8, prohibits the award of punitive damages in defamation cases, unless some other constitutional provision requires that they be allowed. As we have shown, Article I, § 10, the other provision with a direct application to defamation actions, does not."

The majority does not address the Supreme Court's concerns expressed in *Wheeler*. Instead, it relies on *Huffman and Wright Logging Co. v. Wade*, 109 Or App 37, 42, 817 P2d 1334 (1991), *rev allowed* 312 Or 676, in which this court upheld a punitive damage award against Earth First! demonstrators who trespassed on logging equipment. *Huffman and Wright Logging* distinguished *Wheeler* as a case "where the allegedly tortious conduct was the content of the speech or the expression of opinion," not the harm arising from a physical trespass. 109 Or App at 42.

I am not convinced that that distinction is meaningful. Whether the underlying tort is defamation or intentional trespass, the threat of a large punitive damage award carries a significant risk that potential defendants who engage in expressive activities will steer clear of lawful public criticism about the plaintiff. That risk is not ameliorated because, after the fact, the complaint for damages will focus on unpermitted trespassing or that a trial court will probably instruct a jury to award punitive damages only for conduct, including expressive conduct, that is not protected. The unacceptable consequence in each case is the same: self-censorship.

However, the *Huffman and Wright Logging* case is now the law. As the majority correctly notes, it cannot be distinguished from this case. The Supreme Court has granted review of that case but, to date, has not altered it. *Huffman and Wright Logging* supports the majority's result.

Accordingly, I concur.