Argued July 7, affirmed as modified August 10, 1960

# CORDER *v.* A & J LUMBER CO., INC.

354 P. 2d 807

444

*William D. Green, Jr.,* Roseburg, argued the cause and filed a brief for appellant.

*Don H. Sanders,* Roseburg, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan and Holman, Justices.

HOLMAN, J. (Pro Tempore)

The defendant, A & J Lumber Co., Inc., owned 513 acres of land in Douglas county which had been the subject of a foreclosure, and only a short time remained of the redemption period. Under these circumstances, on or about July 19, 1955, it entered into a written agreement with the plaintiff Corder, who operated a sawmill, whereby Corder purchased all the timber and cordwood on the premises for the cash sum of $6,500. In addition, defendant agreed to log the timber and deliver it to plaintiff's mill for the sum of $30 a thousand board feet. Defendant guaranteed there were at least 700,000 board feet on the premises and that he would deliver that much to plaintiff's mill on or before October 31, 1956, delivering not less than 150,000 board feet in any one three-months' period, beginning August 1, 1955. If there was not that much timber on the premises, defendant obligated itself to obtain the balance elsewhere and to deliver it to plaintiff's mill at no additional cost to the plaintiff except for the logging and delivery cost

of $30 per thousand. In the event of conditions beyond defendant's control making it unreasonable or difficult to log, defendant was to have an extension of time, not to exceed three months.

As security for the performance of its agreement to log and deliver the timber, defendant pledged the title to the real property, putting a deed in escrow to be delivered to plaintiff if defendant did not perform.

After defendant commenced the logging under the contract, it encountered a large number of cull logs. Often it was not possible to tell if the logs would be culls until after the tree was felled and bucked. Defendant wished to salvage his investment in these logs and to deliver them to a mill, closer to the logging operation, which used this type of log. Plaintiff did not want and could not use this type of log. As a result the parties orally modified the contract to the effect that defendant had the right to deliver the culls to this other mill and keep the entire proceeds except for the sum of $3 per thousand to be paid plaintiff as stumpage. The culls so delivered were not to count upon the 700,000 board feet defendant had guaranteed to deliver to plaintiff's mill. A memorandum of that part of the oral modification which provided that the culls were not to count toward the amount required to be delivered to plaintiff's mill was put in writing in the form of a letter from defendant to plaintiff.

Defendant delivered to plaintiff during the prescribed period only 363,368 board feet of timber. In no three-months' period did it deliver as much as 150,000 board feet. In the winter of 1955-1956 it was prevented from logging for not to exceed six weeks because a flood washed out some bridges. Upon the date specified in the contract for its termination, de-

fendant asked for an extension of time because of the flood but was refused. Immediately after the expiration of the period stated for performance, plaintiff secured and recorded the deed to the real property.

After recording the deed, plaintiff brought this suit to quiet title to the real property covered by the deed. Defendant filed an answer asking that the deed be declared to be a mortgage. Upon trial the lower court found that the deed was in fact a mortgage to secure performance of the contract, that the contract had been breached by defendant, and that plaintiff's damages because of defendant's breach were $6,720. The court decreed foreclosure of the mortgage in this amount, with interest at 6% from October 31, 1956, and directed the sale of the property, defendant to have the usual redemption period provided by law. From this decree, defendant appeals.

Plaintiff has not cross-appealed from the trial court's holding that the deed was in fact a mortgage, so this court will not examine that matter further.

Defendant first contends that in holding that the deed was a mortgage it was necessary for the court to find that certain equities were with the defendant and that these equities required that defendant not be placed in a position where he is financially unable to redeem. The logic of this argument escapes us.

■ Defendant next contends that plaintiff himself was in default under the contract because of his refusal to grant an extention as a result of the delay caused by the flood. Flood or no flood, defendant never delivered the minimum amount of logs required in any three-months' period, and it delivered only one-half the amount required during the total life of the con-

tract. The delay was for a relatively short time considering the total length of time defendant had in which to perform and this during a period of time when logging was usually difficult. It is obvious the flood was not the cause of defendant's breach.

Defendant contends plaintiff breached the contract in failing to allow the defendant to supply the shortage of logs from other sources. There is no evidence that plaintiff prevented defendant from doing so.

■ Defendant contends that plaintiff breached the contract because he did not allow defendant any credit for the cull logs on the 700,000 feet required to be delivered, as the modification providing they should not be counted was without consideration. Plaintiff allowed defendant to sell logs belonging to him and to keep the proceeds therefrom in return for the payment of $3 a thousand. This certainly furnished consideration moving from both the parties, and there is, therefore, no merit to defendant's contention.

Defendant contends the trial court failed to consider evidence that plaintiff's mill was shut down about the time the contract was terminated and the mill had no further use for the logs. That plaintiff had no use for the logs after the expiration of the contract most certainly is irrelevant to the issues here.

■ Defendant contends there is no evidence on which to sustain a finding of damages, that no damages were pleaded, and that the use of the market value of logs in that locality as a criterion upon which to base damages is speculative. All of plaintiff's costs relative to the logs are set out in the agreement. The president of defendant corporation testified that the market value of the logs was $50 a thousand. The defendant,

having asked that the deed be declared a mortgage, cannot complain if the court then computes the amount for which the property was pledged. The amount for which the property was pledged would be the damage suffered by plaintiff because of defendant's breach, as the property was pledged to secure performance of the logging contract. A court of equity, having taken cognizance of the matter, most certainly has the power to dispose of all matters relevant thereto, legal or equitable. *Ruby v. West Coast Lbr. Co.,* 139 Or 388, 10 P2d 358. To base plaintiff's damages on the market price of logs during the life of the contract is in effect to give plaintiff the benefit of his bargain. The benefit-of-the-bargain rule in computing damages in cases of breach of contract is so well ingrained in the law of this state as to not require citation of authority.

■ Defendant contends the damages for breach of contract were not properly computed. The defendant obligated himself to deliver 700,000 feet of logs to plaintiff's mill from the timber plaintiff purchased or from other sources at no additional cost to plaintiff except $30 per thousand for the logging and delivery. The timber on the land in question belonged to plaintiff regardless of whether defendant fulfilled his contract to deliver the logs or not, as the contract provided, in that portion relative to delivery of the deed out of escrow after either breach or fulfillment by defendant, as follows:

"* * * Upon receipt of said deed by First Party or Second Party as herein set out, the other party shall have no further claim or interest in said land (except as to Second Party who shall have all said timber regardless of who receives said deed, as above noted)."

If the logs had been delivered as agreed, plaintiff would have had logs at the mill worth $50 per thousand. The cost of them to plaintiff would have been stumpage of $6,500, which, when divided by 700,000, makes stumpage per thousand feet of $9.28. This, when added to the $30 which was to be paid by plaintiff to defendant for logging and hauling, makes a total cost of $39.28 per thousand. The difference between this figure and $50 is $10.72 per thousand. Defendant delivered 363,368 feet of timber. This left a deficiency under the contract of 336,632 feet. At $10.72 per thousand this amounts to $3,608.69. Defendant contends the damages should be the difference between the $30 per thousand for which it agreed to log and deliver the timber and the cost to plaintiff in having it done by others, as plaintiff still owns the stumpage. This entirely overlooks the provision of the contract which provides that the logs were to be delivered during a specified time when there was a favorable market.

■ The trial court apparently treated plaintiff's rights to the timber as being terminated upon the expiration of the period for its delivery and included in the damages the value of the stumpage on the part not delivered. This was not proper under the terms of the contract, as plaintiff will continue to own the standing merchantable timber and cordwood remaining on the property. It is only the land which was pledged for the performance of the contract and which the foreclosure proceeding affects.

It is now important to determine whether there is 336,632 feet of timber remaining on the property, as defendant obligated itself that there would be a minimum of 700,000 feet there. In not allowing any stumpage in plaintiff's damages, we were presuming

that enough timber remained upon the land to fulfill defendant's obligation. A cruise of the property showed 285,000 feet of timber remaining. This leaves a deficiency of 51,632 feet. At $9.28 per thousand stumpage this amounts to $479.14. Added to the other damages, this makes total damages of $4,087.83.

Defendant further contends that the lower court was in error in allowing interest on the unliquidated amount of the damages from October 31, 1956, which was the date of the termination of the contract. This contention is disposed of by the case of *Public Market Co. v. Portland,* 171 Or 522, 130 P2d 624, 138 P2d 916. There the court held that interest was allowable in a case for breach of contract where there was a time of definite default and the amount was of such a nature that its exact pecuniary amount was either ascertained or ascertainable by simple computation or by reference to generally recognized standards such as market price.

As the result of the above, the decree of the trial court will be modified in that the amount due and owing plaintiff as of October 31, 1956, will be $4,087.83, and the plaintiff will be decreed the owner of the standing merchantable timber and cordwood on the premises, regardless of what disposition of the property is made on foreclosure sale or on redemption.