Argued and submitted February 12, vacated in part; remanded for reconsideration in part; otherwise affirmed November 12, 1992, reconsideration denied January 13, petition for review pending 1993

## Cindi L. NELSON,
*Respondent,*

*v.*

## EMERALD PEOPLE'S UTILITY DISTRICT,
a public utility district,
Lionel Topaz and Jim Theabolt,
*Appellants.*

(16-89-00028; CA A66055)

840 P2d 1384

David Jensen, Eugene, argued the cause for appellants. With him on the briefs was Jensen, Fadeley & Elmore, Eugene.

Martha L. Walters, Eugene, argued the cause for respondent. With her on the brief were Suzanne Bradley Chanti and Swanson & Walters, P.C., Eugene.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

De MUNIZ, J.

**De MUNIZ, J.**

Plaintiff was discharged from her job at Emerald People's Utility District (Emerald). She prevailed on federal civil rights and breach of contract claims in a jury trial. Defendants appeal. We affirm the judgment only in part.

We state the facts in the light most favorable to plaintiff. Or Const, Art VII (amended), § 3; *Standard Prod. Co. v. ICN United Med. Labs*, 279 Or 633, 635, 569 P2d 594 (1977); *Griffin v. Tri-Met*, 112 Or App 575, 577, 831 P2d 42 (1992). Plaintiff began working for Emerald in 1985. She worked there for three years as a data entry clerk and in customer services, until she was discharged on April 19, 1988. Her data processing supervisor, Hamilton, completed an annual performance appraisal of plaintiff a month before she was fired. His report indicated that plaintiff always followed Emerald policies and procedures and that she was almost always punctual. He recommended that she be given a merit increase.

In February, 1988, plaintiff had a positive pregnancy test and submitted the bill for the test to Emerald's benefits department. The bill was returned to her with an explanation that it would not be paid until her baby was born or the pregnancy was terminated. Plaintiff's pregnancy caused her to experience nausea. Her doctor advised her that, to avoid nausea, she should "[t]ry to keep something in [her] stomach at all times by eating five or six small meals each day."

On April 18, plaintiff brought a breakfast sandwich to work. Emerald employees were allowed to eat "snacks" at their desks but were supposed to go to a lunch room for "meals." Employees ate things like donuts, bagels with cream cheese and baked goods at their desks without criticism. Smith, Emerald's public relations manager, saw plaintiff at her desk with the sandwich and told Theabolt, the manager of finance and administration. Theabolt went to the general manager, Topaz, and recommended that plaintiff be given a written reprimand. Topaz suggested that plaintiff's conduct could be considered insubordination.

Shay, a former operations manager, testified that he, Theabolt and Topaz had attended meetings where the senior staff discussed containing the cost of Emerald's medical

insurance program. Afterwards, employees were instructed to limit medical costs to "keep our premiums down." Shay also testified that plaintiff's pregnancy had been discussed at the staff meetings and that he had heard Topaz and Theabolt discussing the cost of plaintiff's medical expenses related to her pregnancy.

Although Theabolt had recommended that plaintiff be given a written reprimand, Topaz decided that she should be fired. Theabolt ultimately agreed and prepared a termination letter. He showed the letter to Hamilton, the data processing supervisor. Hamilton, whose brother also worked at Emerald and was the baby's father, asked Theabolt if plaintiff was being fired because she was pregnant. Hamilton summoned plaintiff to his office on April 19 to meet with him and Theabolt. Theabolt gave her the termination letter, which explained that the termination was effective at the end of that workday and that she could request a post-termination hearing.

Plaintiff filed this civil rights[1] and breach of contract action, claiming that she had been discharged because of her pregnancy and that she was not given a pre-termination hearing. A jury awarded her non-economic damages on her civil rights claim and assessed punitive damages against Topaz and Theabolt. It awarded economic damages on her breach of contract claim.

In their first assignment of error, defendants contend that the court erred by denying their motion to dismiss plaintiff's civil rights claim. They contend that her complaint fails to allege that she had a property interest in her employment or that defendants were acting under color of state law.

---

[1] 42 USC § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any Citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

Plaintiff also alleged discrimination, wrongful discharge and negligence, but did not prevail on those claims.

In reviewing a motion to dismiss, we accept the allegations in the complaint as true. ORCP 21A(8); *Madani v. Kendall Ford, Inc.*, 312 Or 198, 201, 818 P2d 930 (1992). We also treat as true any reasonable inferences favorable to plaintiff that could be drawn from the facts alleged. *Machunze v. Chemeketa Community College*, 106 Or App 707, 712, 810 P2d 406, *rev den* 312 Or 16 (1991).

■      Plaintiff's complaint alleges:

"6.

"On or about August 19, 1985, Plaintiff was employed by [Emerald] as a data entry clerk.

"7.

"Plaintiff successfully completed her six-month probationary period on or about February 18, 1986. At the completion of her probationary period, Plaintiff became a permanent employee of [Emerald]."

Plaintiff's allegation that she became a "permanent employee" is sufficient to allege that she had a property interest, because it permits an inference that she had "more than a unilateral expectation" of continued employment. *Board of Regents v. Roth*, 408 US 564, 577, 92 S Ct 2701, 33 L Ed 2d 548 (1972). She had the right "to prove the legitimacy of [her] claim of such entitlement." *Perry v. Sindermann*, 408 US 593, 603, 92 S Ct 2694, 33 L Ed 2d 570 (1972).[2]

■      The complaint also alleges:

"2.

"At all times material herein, [Emerald] was a public utility district organized and operated under the laws of the State of Oregon.

"3.

"At all times material herein, Defendant Lionel Topaz was acting under color of state law in his capacity as the general manager and highest policy-making official of [Emerald] * * *.

---

[2] ORS 261.445(3)(f) provides that the manager, Topaz, shall "[h]ire and discharge clerks, laborers and other employees under direction of the manager." Defendants contend that the statute "gives the manager unfettered authority to fire personnel, and provides no property interest in employment." Nothing in the statute even remotely suggests that the manager's authority is unfettered or that plaintiff's employment was terminable at will. It merely designates who has the authority to "hire and discharge" certain employees.

"4.

"At all times material herein, Defendant Jim Theabolt was acting under color of state law in his capacity as the manager of finance and administration of [Emerald] * * *."

Plaintiff pled, and defendants admitted, that Emerald is a public utility district and that Topaz and Theabolt acted in their official management capacity for the utility. Public utility districts are created by election and may hold elections, levy taxes and exercise the power of eminent domain. Or Const, Art XI, § 12; ORS 261.105. Emerald is a governmental entity. Defendants' contention that the complaint does not allege that they were acting under color of state law is without merit, and the court properly denied their motion to dismiss.

■    In their second assignment of error, defendants contend that the court erred by denying their motion for judgment on the pleadings on the ground that plaintiff was not entitled to a hearing before she was fired. In *Cleveland Bd. of Educ. v. Loudermill*, 470 US 532, 105 S Ct 1487, 84 L Ed 2d 494 (1985), the Supreme Court held that, when a public employee with a property interest in continued employment is discharged, a post-termination hearing, by itself, is not sufficient to satisfy the requirements of due process. Although plaintiff was not entitled to a "full evidentiary hearing" before being fired, she was entitled to an opportunity to present "plausible arguments that might have *prevented* [her] discharge." 470 US at 544. (Emphasis supplied.)

Plaintiff alleges:

"13.

"Prior to her discharge, Defendants did not provide Plaintiff with written or any notice of the charges against her, a reasonable or any opportunity to respond to the charges against her, or an opportunity to make a response to a person with authority to discharge her."

Defendants' motion for judgment on the pleadings admits all of the facts alleged in plaintiff's complaint. *Straub v. Oregon Electric Ry. Co.*, 163 Or 93, 96, 94 P2d 681 (1939); *Brown v. Insurance Company of North America*, 93 Or App 355, 357, 762 P2d 330 (1988), *rev den* 307 Or 303 (1989). Plaintiff's complaint alleged facts sufficient to assert that she was

denied "a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill, supra*, 470 US at 546. The court correctly denied the motion.

In their next assignment, defendants contend that the court erred when it denied their motion for a directed verdict on plaintiff's civil rights claim. Their only argument repeats their contention that plaintiff's pleadings were insufficient, which we have already rejected. They do not argue that there was no evidence from which the jury could have found the facts necessary to establish plaintiff's claim. Or Const, Art VII (amended), § 3; *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984); *Hirsovescu v. Shangri-La Corp.*, 113 Or App 145, 147, 831 P2d 73 (1992). The court properly denied the motion.

After losing her job, plaintiff applied for unemployment compensation and was denied benefits. She requested a hearing before an Employment Division referee. Defendants did not attend the hearing. In his order setting aside the decision that denied benefits, the referee concluded:

"[Plaintiff] was discharged, but not for misconduct in connection with her work.

"* * * * *

"[Her conduct] was, at most, an isolated instance of poor judgment rather than the willful disregard of employer's interests necessary to establish disqualifying work-connected misconduct."

The court admitted the referee's opinion in evidence and instructed the jury:

"I instruct you that it has already been determined in a prior proceeding that plaintiff was not discharged for willful misconduct in connection with her work, and therefore you're precluded from finding the plaintiff engaged in willful misconduct."

■       In their tenth assignment of error, defendants contend that the court erred by admitting the referee's decision. In their eleventh assignment, they contend that the court erred by instructing the jury that the referee's decision had a preclusive effect. Their combined argument for those assignments focuses solely on the propriety of the issue preclusion instruction. Accordingly, we address only the latter issue. *See*

*Meskimen v. Larry Angell Salvage Company*, 286 Or 87, 94, 592 P2d 1014 (1979); *Hilt v. Bernstein*, 75 Or App 502, 512, 707 P2d 88 (1985), *rev den* 300 Or 545 (1986).

Defendants contend that the instruction "took from the jury the entirety of the defense case that plaintiff was willfully insubordinate." Defendants did not allege in their answer that plaintiff was "willfully insubordinate" or that she had engaged in "willful misconduct."[3] The instruction that they challenge did not preclude the jury from finding that plaintiff violated Emerald's rules by eating the breakfast sandwich at her desk or that she was fired for eating it at her desk.

In addition, the court instructed the jury:

"Plaintiff also claims that defendants discharged her for a discriminatory purpose in violation of her right to equal protection. To prove her equal protection claim, plaintiff must show that a substantial factor in defendant's decision to discharge was her pregnancy.

"In order for plaintiff to prove she was discharged without just cause, she must prove the defendants did not discharge her because of the reasons they gave, and that her discharge was because of her pregnancy."

Those instructions correctly informed the jury that, in order for plaintiff to prevail on the equal protection theory of her civil rights claim, she had to prove that her pregnancy was a factor that made a difference in the decision to fire her. *See Personnel Administrator of Mass. v. Feeney*, 442 US 256, 279,

---

[3] Other than denying specific allegations in the complaint, defendants pled:

"For [an] affirmative defense to plaintiff's [civil rights] claim, defendants allege:

"7.

"At all times defendants acted in a reasonable good faith belief that their conduct was reasonable.

"* * * * *

"For an affirmative defense to all of plaintiff's claims, defendants allege:

"16.

"Plaintiff has failed to mitigate her damages, if any."

Those are the only affirmative defenses relating to plaintiff's civil rights and contract claims that the court did not strike. None of the defenses that were stricken contained any allegation of "willful misconduct" or that plaintiff was "willfully insubordinate."

99 S Ct 2282, 60 L Ed 2d 870 (1979); *Kelly v. American Standard, Inc.*, 640 F2d 974, 984 (9th Cir 1981); *Laugesen v. Anaconda Company*, 510 F2d 307, 317 (6th Cir 1975).

In its instructions to the jury on plaintiff's breach of contract claim, the court said:

"If you find that plaintiff and defendant had a contract that provided that plaintiff would not be dismissed except for just cause, and even if the defendants terminated that contract the dismissal would not be in breach of that contract if there was just cause for plaintiff's dismissal.

"For plaintiff to prove her allegations that [Emerald] breached the contract with her by terminating employment because she was pregnant, the plaintiff must prove her pregnancy constituted a physical handicap as set forth in [the] personnel manual."[4]

Those instructions did not equate "just cause" with "willful misconduct," nor did they preclude the jury from concluding that plaintiff had been fired for failing to abide by Emerald's rules. Whether her conduct constituted "willful misconduct" was not an issue in either claim. The error, if there was any, was harmless.

■ Next, defendants contend that the court erred by submitting the issue of punitive damages to the jury. Plaintiff asserts that the claim of error is unpreserved, because the court never ruled on defendants' motion for a directed verdict on that issue. When defendants moved at the close of the evidence, the court responded, "I'm not going to rule on that one right now." The court had authority to reserve ruling on the motion, submit the issue to the jury and allow defendants to move for judgment notwithstanding the verdict. ORCP 63B. Defendants preserved the issue by making the proper motion after the jury returned a verdict that included punitive damages.

---

[4] Emerald's personnel manual says:

"[Emerald] recognizes that it is insufficient to proclaim opposition to discrimination; therefore, [Emerald] takes the initiative and affirmative action to achieve the status of an equal opportunity employer. To achieve this end, [Emerald] hereby reaffirms its official policy that discrimination on the basis of * * * sex * * * or physical handicap is prohibited by all employees of [Emerald]. The policy will apply, but not be limited to * * * termination * * *. All personnel actions will be administered in accordance with this policy."

Defendants contend that "there is no federal common law as to punitives" and that there was no evidence that defendants' conduct satisfied the state standard for imposing punitive damages. In *Smith v. Wade*, 461 US 30, 51, 103 S Ct 1625, 75 L Ed 2d 632 (1983), the Supreme Court said:

"As for punitive damages, however, in the absence of any persuasive argument to the contrary based on the policies of § 1983, we are content to adopt the policy judgment of the common law — that reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages."

Federal standards for imposing punitive damages in § 1983 claims preempt any inconsistent state law. *Jackson v. Pool Mortg. Co.*, 868 F2d 1178, 1181 (10th Cir 1989); *Rogers v. Saylor*, 306 Or 267, 278-85, 760 P2d 232 (1988).

■ Topaz developed the Emerald policy that allowed him to fire employees without any pre-termination hearing.[5] The evidence that he fired plaintiff without one is unrebutted. Emerald was concerned about keeping health insurance premiums down. Theabolt and Topaz discussed the costs relating to plaintiff's pregnancy. Topaz decided to fire plaintiff despite Theabolt's recommendation that she be given a written reprimand. The evidence is sufficient to allow the jury to infer that plaintiff was fired because she was pregnant and that Topaz acted with reckless or callous indifference to her constitutional rights. *See Davis v. Mason County*, 927 F2d 1473, 1485 (9th Cir), *cert den* ___ US ___ (116 L Ed 2d 227) (1991).

■ However, the evidence is not sufficient to permit punitive damages against Theabolt, even though he prepared the termination letter and handed it to plaintiff. Topaz was the only person who had the authority to discharge, and he made the decision to fire plaintiff. There is no evidence that Theabolt encouraged Topaz' decision, and there is no evidence that Theabolt had anything to do with adopting the

---

[5] Emerald's personnel manual contains this provision:

"These policies and procedures set forth the Personnel Program to be followed by [Emerald] *as adopted by General Manager*. These policies and procedures are established in accordance with the authority granted the General Manager by ORS 261.445 and Board Resolution 83-9." (Emphasis supplied.)

rules that permitted Topaz to fire her without a pre-termination hearing. By allowing the jury to assess punitive damages against Theabolt, the court erroneously allowed the jury to shoot the messenger.[6]

The court instructed the jury:

"To award punitive damages, you must find that defendants Topaz or Theabolt's conduct in discharging plaintiff was in reckless or callous disregard of or indifference to plaintiff's constitutional rights."

Defendants contend that that instruction did not properly explain the state standards for imposing punitive damages. However, the instruction is consistent with the federal common law standard that the Court articulated in *Smith v. Wade, supra.* The court did not err by giving it with respect to Topaz.

■ Next, defendants contend that the court erred by not requiring plaintiff to elect between remedies in her first and second claims. The gist of their argument is that the verdict gives plaintiff a double recovery, because both claims allege lost wages and employment benefits. However, the jury awarded only non-economic and punitive damages on plaintiff's civil rights claim. It did not award any damages for lost wages or employment benefits on that claim. There was no double recovery.[7]

■ Next, defendants contend that the court's award of attorney fees was erroneous. They correctly argue that plaintiff is entitled to attorney fees only on her civil rights claim and not on her contract claim.[8] In *Greb v. Murray*, 102 Or App 573, 576, 795 P2d 1087 (1990), we held:

---

[6] Theabolt does not contend that he cannot be held liable for the non-economic damages assessed against him, and we express no opinion about that.

[7] In their reply brief, defendants abandoned their double recovery theory and argued that the court should have required plaintiff to elect between inconsistent verdicts. We decline to consider a contention that is raised for the first time in a reply brief. *Watson v. State of Oregon*, 71 Or App 734, 736 n 1, 694 P2d 560 (1985); *Espinosa v. Southern Pacific Trans.*, 50 Or App 561, 573 n 15, 624 P2d 162, *aff'd* 291 Or 853, 635 P2d 638 (1981).

[8] 42 USC § 1988 provides, in part:

"In any action or proceeding to enforce a provision of [42 USC § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Plaintiff did not allege that she was entitled to attorney fees on her contract claim. *See* ORCP 68C(2).

"When a party prevails in an action that encompasses both a claim for which attorney fees are authorized *and* a claim for which they are not, the court must apportion the fees incurred for each claim. It may award only the fees reasonably incurred for the claim for which attorney fees are authorized, except when there are issues common to both claims." (Emphasis in original.)

Although the factual issues in plaintiff's civil rights claim and her contract claim may be virtually identical, the two claims involve legal issues that are as different as night and day. Plaintiff was not entitled to recover attorney fees incurred in the preparation and presentation of legal issues relating to her contract claim.

Plaintiff's attorney submitted a fee statement that did not apportion fees between her civil rights and contract claims.[9] In *Orendain v. Meyer Square Ltd.*, 97 Or App 608, 612, 776 P2d 1309, *rev den* 308 Or 593 (1989), we held that descriptions of services in a detailed fee statement coupled with evidence presented at a hearing on attorney fees was sufficient to enable the court to apportion fees properly. We have examined the 14-page exhibit detailing the fees and services of plaintiff's attorney. The exhibit has numerous entries for "research" and other services described in such general terms that the court could not have ascertained which claim they related to without conducting an evidentiary hearing. The court could not have properly apportioned fees solely by examining the fee statement, and it did not conduct an evidentiary hearing in that regard. The amount of the attorney fee award was erroneous.

■■ ■■ Finally, defendants contend that the court erred by awarding prejudgment interest on plaintiff's contract claim. An award of prejudgment interest is appropriate when "the exact pecuniary amount was either ascertained, or ascertainable by simple computation." *Corder v. A & J Lumber Co., Inc.*, 223 Or 443, 451, 354 P2d 807 (1960). The amount of damages must have been ascertained or ascertainable when the breach occurred. *See Wells v. Marleau*, 79 Or App 784, 720 P2d 409, *rev den* 302 Or 159 (1986). At the moment when plaintiff was terminated, she could not have quantified her

---

[9] Plaintiff's attorney did submit an affidavit estimating fees "that related only to the claims upon which Plaintiff was not successful."

economic damages, because she could not have known how long she would be unemployed or what her rate of compensation would be if and when she found substitute employment. The court erred by awarding prejudgment interest.

Defendants' remaining assignments of error are without merit.

Award of prejudgment interest vacated; punitive damages award against defendant Theabolt vacated; remanded for reconsideration of attorney fees; otherwise affirmed.