Submitted January 5, 2012, affirmed February 13, petition for review denied
July 25, 2013 (353 Or 868)

In the Matter of the Estate of
Frederick John Blakee, Jr., Deceased.

Donald J. TILTON,
Personal Representative of the Estate of
Frederick John Blakee, Jr., Deceased,
*Appellant*,

*v.*

Anna L. LEE,
Christine Kincaid,
Leslie Aleshire,
and Zachary Blakee,
*Respondents*.

Curry County Circuit Court
08PR059; A147058

298 P3d 559

Jonathan M. Radmacher and McEwen Gisvold LLP, and John C. Babin and BabinLaw PC filed the brief for appellant.

No appearance for respondents.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Petitioner, in his capacity as an estate's personal representative in this probate proceeding, appeals from a judgment of final distribution, arguing that the trial court erroneously reduced the attorney fee award requested by petitioner in his final accounting from $22,729.40 to $9,500.[1] Specifically, petitioner contends that "the trial court exercised its 'discretion' without evidence, while simultaneously refusing to hear testimony and argument regarding [attorney fees]." That is, petitioner assigns error to (1) the trial court's determination as to the reasonableness of the fees requested and (2) the trial court's denial of petitioner's request for a hearing regarding attorney fees.[2] On review for abuse of discretion, *Kidney Association of Oregon v. Ferguson,* 315 Or 135, 140-41 n 9, 843 P2d 442 (1992), we affirm.

On December 8, 2007, the decedent passed away intestate, leaving four surviving heirs and an estate worth approximately $200,000 consisting of a single piece of real property located in Curry County and assorted items of personal property.[3] Each of the heirs resided in California, and nothing occurred until May 2008 when one of the heirs, Lee, contacted Oregon attorney Babin to represent her as the personal representative of the estate. However, soon after, Lee decided against serving as the personal representative and Babin located a creditor, Byrtus, who agreed to assume that responsibility. Babin filed a petition for administration of intestate estate and appointment of personal representative on July 3, 2008. Byrtus, however, quickly expressed interest in purchasing personal property

---

[1] Respondents have not appeared on appeal.

[2] In addition, petitioner argues that "[t]he trial court erred in failing to make findings of fact and conclusions of law sufficient to enable meaningful appellate review[,]" relying in part on *McCarthy v. Oregon Freeze Dry, Inc.,* 327 Or 185, 190-91, 957 P2d 1200 (1998) ("[A court] must describe the relevant facts and legal criteria for the court's decision to award or deny attorney fees in any terms that are sufficiently clear to permit meaningful appellate review."). We address that argument to some extent in conjunction with our analysis of petitioner's first assignment of error and otherwise reject it without further discussion.

[3] Another piece of real property located in California was later identified as part of the estate; however, petitioner accepted no responsibility for the administration of that property and, instead, wrote a letter to the heirs advising them of the property's location and explaining how to obtain legal counsel to attend to it.

belonging to the estate, an amended petition was filed, and ultimately petitioner was appointed personal representative of the estate on August 6, 2008. Babin facilitated that process and has served as petitioner's counsel throughout the entirety of these proceedings.

Petitioner, in conjunction with Babin and his staff, proceeded to administer the estate—resolving creditors' claims, taking an inventory of the personal property of the estate, communicating with the heirs regarding that property, selling some items, and unsuccessfully attempting to sell the piece of real property, which had fallen into disrepair during the months between decedent's death and the appointment of petitioner. On October 30, 2009, petitioner filed a first annual accounting and petition for interim payment of Babin's attorney fees, requesting $16,051 as a partial payment of attorney fees (represented to be "less than 80% of the anticipated attorney fees and costs"). An affidavit of attorney fees and accompanying documentation was filed concurrently.

The trial court denied the request for interim fees in a December 7 letter opinion addressing petitioner's counsel, stating, "In my review of the accounting, a number of concerns arose, all of which should be addressed in the final accounting." The court detailed those concerns, which, in relevant part, consisted of (1) an inquiry regarding four specific payments to petitioner's counsel totaling over $1,200 "which [the trial court did] not see reflected as paid in your billing statements and for which it appears there was no prior court approval"; (2) a concern "regarding some of the funds paid directly to your staff * * * for things that either the personal representative could have done personally, or could have hired less expensive workers to handle[,]" including $2,306.22 charged to "[o]rganize for estate [s]ale"; and (3) a general concern "regarding the amount of attorney fees, which seems high for an estate of this size and complexity." Regarding the overall fee calculation, the trial court stated:

"There are many instances in your billing where it appears the amount of time spent is excessive. For example, 2 hours of attorney time and over 5 hours of staff time are

attributed to the preparation of the petition and the amended petition with charges of over $600. 1.3 hours of staff time was apparently spent on preparing three simple waivers and 'postage time' and 'copy time' presumably for those same waivers. There are other instances where it appears what is essentially one task is broken down into multiple entries which, when added together, show what appears to be excessive amounts of time charged for the task. Please review and revise your billing as you feel is appropriate prior to resubmitting it to the court."

Approximately eight months later, on August 13, 2010, petitioner filed a final accounting and petition for judgment of final distribution and payment of attorney fees along with a 14-page statement of attorney fees and 41 pages of supporting documentation, requesting a final award of $22,729.40 in attorney fees and costs.[4] Notice of time to file objections to the final accounting was sent to each of the heirs as required by ORS 116.093, and no objection was filed. However, in a September 3 letter opinion addressed again to petitioner's counsel, the trial court reprised and expanded upon its concerns regarding petitioner's request for attorney fees—stating that its earlier concerns had "not been adequately addressed" by petitioner's final accounting, statement of attorney fees, and supporting documentation. The trial court explained, in pertinent part:

"At the time you made a request for interim fees in this matter I had a discussion with you about concerns I had regarding your billing and I denied the request for interim fees. Those concerns have not been adequately addressed in your most recently filed statement of attorney fees in which you request $22,729.40 in attorney fees and costs. Generally, the average fee for completing a probate in Coos and Curry Counties is around $4,000 to $6,000, assuming it is not complicated and does not involve any contested issues. It is quite rare for attorney fees and costs in this area to exceed $10,000 when there are no contested issues or litigation. The estate assets in this case consisted of a single piece of real property, some vehicles, guns, coins, and miscellaneous personal property which, according to the inventory, [were valued at] $199,835.37. This case was slightly more complex than is average, but, after reviewing

---

[4] Of the $22,729.40 requested, only $303.75 was itemized as outstanding costs rather than attorney fees given that the majority of costs had been advanced.

the factors set forth in ORS 116.183, I find that a reasonable amount for fees and costs to complete this probate matter should have been no more than $9,500.

"Examples of complications in this case which do justify some additional expense include finding a new fiduciary and filing the appropriate documents in relation to the new fiduciary, and perhaps slightly more work than is typical related to claims against the estate. * * * There is certainly ample evidence of time spent by you and your staff, but there is little correlation between the time spent and benefit to the estate or the amount of responsibility assumed and the total value of the estate. A good example of this is the time spent attempting to sell the real estate without the help of an agent or broker. Also, it appears that your staff was hired by the personal representative and paid separately by the estate for work related to the sale of personal property. That is not improper and in fact I have no reason to doubt they did an excellent job in that capacity but there is a relationship between that and the overall reasonable cost of handling this estate."

Following receipt of the trial court's above-quoted letter opinion, petitioner filed a generalized objection to the trial court's finding "that reasonable attorney fees for the personal representative are limited to $9,500.00" and requested a hearing on the matter. He attached a proposed judgment of final distribution, which, notwithstanding the trial court's findings, included an award of $22,729.40 in attorney fees. On September 22, the trial court denied petitioner's request for a hearing. It then modified and signed the proposed judgment of final distribution on October 12—redacting petitioner's proposed $22,729.40 attorney fee award, replacing the amount of "reasonable attorney fees" awarded with $9,500, and apportioning the difference among the four heirs. Petitioner then filed a motion for reconsideration and offer of proof on which no action was taken. This appeal followed.

As noted, petitioner first argues that the trial court abused its discretion in substantially reducing the requested attorney fee award. It is well settled that "[t]he determination of attorney fees to be allowed out of the funds of [an] estate is a matter which rests within the sound discretion of the probate court [and] will not be disturbed on

appeal unless there has been an abuse of discretion." *Smith v. U. S. National Bank*, 47 Or App 967, 977, 615 P2d 1119 (1980) (citing *In re Lachmund's Estate*, 179 Or 420, 170 P2d 748 (1946)); *see Parrott v. Carr Chevrolet, Inc.*, 156 Or App 257, 282, 965 P2d 440 (1998), *rev'd in part on other grounds*, 331 Or 537, 17 P3d 473 (2001) ("The amount of attorney fees is a question of fact as to which the trial court has wide discretion."); *Damerow Ford Co. v. Bradshaw*, 128 Or App 606, 623, 876 P2d 788 (1994) ("The trial court was in the best position to evaluate the attorneys' services and we cannot say that it failed to exercise its discretion properly in fixing the amount."). In determining the amount of attorney fees to be awarded in an estate proceeding, a court must consider the factors set forth by ORS 116.183, which provides, in relevant part, that

> "[a]n award of reasonable attorney fees under this section shall be made after consideration of *the customary fees in the community for similar services*, the time spent by counsel, counsel's experience in such matters, the skill displayed by counsel, the excellence of the result obtained, any agreement as to fees which may exist between the personal representative and the counsel of the personal representative, *the amount of responsibility assumed by counsel considering the total value of the estate*, and such other factors as may be relevant. No single factor shall be controlling."

(Emphases added.)

Here, after petitioner submitted his request for interim fees, the trial court—in addition to denying the request—provided a narrative description of its concerns regarding petitioner's accrual and computation of attorney fees, including concern "regarding some of the funds paid directly to your staff * * * for things that either the personal representative could have done personally, or could have hired less expensive workers to handle." That concern goes directly to "the amount of responsibility assumed by counsel considering the total value of the estate" under ORS 116.183; however, petitioner did not avail himself of the opportunity to address that concern. Most strikingly, in the statement of attorney fees, rather than directly address the issue of whether the personal representative or much

less costly workers hired at his request could have handled myriad nonlegal tasks, great detail was provided regarding the excellent work performed by counsel's paralegal ($90 per hour) and legal assistants ($45 per hour). One example is particularly illustrative and underscores the trial court's concerns and overall reasonableness determination: The statement of attorney fees explained that

> "[s]everal matters *handled by the attorney and paralegal* during this probate make this a complex probate instead of just a simple probate. There were 5 vehicles/recreational vehicles on the estate property that were in poor condition and only one of the vehicles had keys to it. The home itself as well as the garage did not have keys and all of the aforementioned assets had to be re-keyed in order to have access to them and their contents. Numerous attempts were made to sell the various vehicles [without success] * * *. Therefore, when an offer was made to purchase the whole lot of vehicles for one sum, 'as is[,]' the administrator agreed."

(Emphasis added.)

That statement goes directly to the trial court's concern as to the responsibility assumed by counsel considering the total value of the estate under ORS 116.183. It was well within the trial court's discretion to find that predominately nonlegal services such as the preparation and sale of vehicles and other personal property should not reasonably have been handled by persons charging $200 (counsel's rate), $90, or even $45 per hour, but rather by petitioner or "less expensive workers" hired at his request.[5] *See Estate of Leda Mae Grove v. Selken*, 109 Or App 668, 677, 820 P2d 895 (1991), *rev den*, 312 Or 676 (1992) ("The court also disallowed payment of legal fees to * * * [the] attorney for the estate, because it found that much of the work claimed as attorney work was more properly classified as administrative work of the personal representative. We agree with the probate

---

[5] In the final accounting and statement of attorney fees, billing for legal staff time was broken down and set forth as follows: $10,489.75 in attorney time, *$11,614.50 in paralegal time*, and $2,252.25 in legal assistant and bookkeeper time. Incidentally, in the statement of attorney fees, counsel asserted that "[t]he use of a qualified paralegal resulted in substantial savings of attorneys fees to the administrator because[ ] these services otherwise would have been billed at attorney rates which are more than double the rate of the paralegal."

court's findings ***."). As noted, the trial court reiterated that point—relating it explicitly to the considerations mandated by ORS 116.183—in response to petitioner's final accounting and statement of attorney fees:

> "There is certainly ample evidence of time spent by you and your staff, but there is *little correlation between the time spent and benefit to the estate or the amount of responsibility assumed and the total value of the estate.* A good example of this is the time spent attempting to sell the real estate without the help of an agent or broker. Also, it appears that your staff was hired by the personal representative and paid separately by the estate for work related to the sale of personal property. That is not improper and in fact I have no reason to doubt they did an excellent job in that capacity *but there is a relationship between that and the overall reasonable cost of handling this estate.*"

(Emphases added.)

Accordingly, based on this record, the trial court's central concern and resultant reduction in attorney fees was supported by ample evidence, was called to petitioner's attention prior to submission of the final accounting and statement of attorney fees, comports explicitly with ORS 116.183, and was explained in "terms that are sufficiently clear to permit meaningful appellate review." *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 190-91, 957 P2d 1200 (1998) ("[a]dequate findings" in support of a court's award of attorney fees "need not be complex or lengthy" but rather must simply be set forth in "any terms that are sufficiently clear to permit meaningful appellate review"); *see also Ashley v. Garrison*, 162 Or App 585, 592-93, 986 P2d 654 (1999) (trial court must describe relevant facts and legal criteria relied upon in determining amount of attorney fee award). Moreover, in taking into account "the customary fees in the community for similar services" under ORS 116.183 and then reducing petitioner's requested fee award accordingly based on evidence in the record as illustrated above, the trial court did not, as petitioner contends, "exercise[] its 'discretion' without evidence[.]"[6] *See Grisby v.*

---

[6] As illustrated above, the trial court additionally relied, under ORS 116.183, on evidence regarding "the time spent by counsel," "the skill displayed by counsel," and "the excellence of the result obtained." The statute provides a nonexclusive

*Progressive Preferred Ins. Co.*, 233 Or App 210, 222, 225 P3d 101 (2010) (in reducing requested attorney fees, "there must be a rational nexus between the factor invoked, and its underlying circumstances, and the amount of the reduction").

Finally, in assigning error to the trial court's refusal to award the requested amount of attorney fees, petitioner argues that the court improperly relied upon "matters outside of the record" such as purportedly "unsubstantiated conclusions about the typical cost of a probate" in the community based on the "judge's experience." Again, the trial court stated,

"Generally, the average fee for completing a probate in Coos and Curry Counties is around $4,000 to $6,000, assuming it is not complicated and does not involve any contested issues. It is quite rare for attorney fees and costs in this area to exceed $10,000 when there are no contested issues or litigation."

Although we express misgivings as to whether the trial court was entitled to rely on specific information apparently derived from personal experience or knowledge, we conclude that petitioner's argument as to its asserted impropriety was not preserved below as required by ORAP 5.45(1). *See State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) (court generally will not consider an unpreserved issue on appeal).

After the trial court made the above-quoted statement regarding average attorney fees for similar matters in the community, petitioner—in requesting a hearing—merely noted a general objection to "the finding of the Court that reasonable attorney fees for the personal representative are limited to $9,500.00." The same generalized objection, albeit accompanied by supporting declarations and other evidence, was repeated in petitioner's motion for reconsideration and offer of proof. Petitioner raises on appeal, for the first time, an argument that "[t]he trial court could only come up with

---

list of factors and states that "[n]o single factor shall be controlling." Although the trial court relied heavily on "the amount of responsibility assumed by counsel considering the total value of the estate," we are satisfied that its findings and conclusions were grounded in consideration of all required factors under ORS 116.183 as well as "such other factors as may be relevant" such as "correlation between the time spent and benefit to the estate."

such a conclusion [regarding the average range of attorney fees for probate cases in Coos and Curry Counties] based upon its own investigation[.]"

Above all, had petitioner raised that argument below in response to the trial court's September 3, 2010, letter opinion—whether in objecting and requesting a hearing, in his motion for reconsideration, or in any other form—the trial court would have been alerted to the potential error such that it could have considered and addressed it—*e.g.*, by taking judicial notice of the figures relied upon. *See Shields v. Campbell*, 277 Or 71, 77, 559 P2d 1275 (1977) ("A party owes the trial court the obligation of a sound, clear and articulate motion, objection or exception, *so as to permit the trial judge a chance to consider the legal contention or to correct an error already made.*" (Emphasis added.)); *Charles v. Palomo*, 347 Or 695, 700, 227 P3d 737 (2010) (we will generally consider an issue advanced on review only if the party "raised the issue below with enough particularity to assure that the trial court was able to 'identify its alleged error' so as to 'consider and correct [it]'" (quoting *Wyatt*, 331 Or at 343)). Such a process would have additionally fostered more extensive development of the record. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (preservation requirement is principally designed to apprise the trial court of a party's position so that the court can consider it and act accordingly, to avoid surprise and unfairness to any opposing party, and to foster full development of the record).

As to whether petitioner was entitled to a hearing on the matter of attorney fees, we note, first, that no objection was filed in response to the final accounting, and thus the statutory scheme governing attorney fee awards in estate proceedings did not mandate a hearing. *See* ORS 116.103 ("Any person entitled to notice under ORS 116.093 may, within the time fixed for the filing, file in the estate proceeding objections to the final account and petition for distribution, specifying the particulars of the objections. Upon the filing of objections the court shall fix the time for hearing thereon.").

Petitioner grounds his argument as to the need for a hearing principally in generalized considerations of due process, as well as the apparent notion that the trial court's finding that the requested amount was unreasonable functioned as a *sua sponte* "objection" for purposes of ORS 116.103. We reject the latter contention, noting that ORS 116.103 provides for a hearing upon "the *filing* of objections" by "*[a]ny person entitled to notice* under ORS 116.093." (Emphases added.) ORS 116.093 provides that notice of the time for filing objections to a final accounting and judgment of final distribution—where the decedent died intestate and neither the Department of Human Services nor the Oregon Health Authority has presented a claim—be provided to each of the decedent's heirs, each creditor "who has not received payment in full and whose claim has not otherwise been barred[,]" and "[a]ny other person known to the personal representative to have or to claim an interest in the estate being distributed." Accordingly, as petitioner implicitly concedes in stating that, "[h]ad anyone objected to the requested attorney fees and costs, the trial court *would have been* <u>required</u> to have a hearing" (underscoring in original; emphasis added), a trial court's reduction of a requested attorney fee award and attendant findings does not constitute an "objection" in an estate proceeding for purposes of ORS 116.103. The court was therefore not required to "fix the time for hearing thereon."

As noted, petitioner also argues more generally that "basic principles of due process and fundamental fairness require that interested parties have an opportunity to be heard if the trial court *sua sponte* makes objections." On that point, we note that, in this case, petitioner was provided with ample opportunity to present evidence and argument. Notwithstanding its denial of a traditional, live "hearing," the trial court reviewed nearly 100 pages of explanation and documentation submitted by petitioner in support of his fee request and then provided two narrative responses thereto. Indeed, summarizing his argument regarding the trial court's denial of his request for a hearing, petitioner states that the trial court "abused [its] discretion in refusing to allow a hearing *or other opportunity for presentation of evidence and argument*." (Emphasis added.) *Cf. Koskela v.*

*Willamette Industries, Inc.*, 331 Or 362, 378, 15 P3d 548 (2000) ("An appropriate hearing is one that is provided 'at a meaningful time and *in a meaningful manner.*'" (Emphasis added.) (Quoting *Armstrong v. Manzo*, 380 US 545, 552, 85 S Ct 1187, 14 L Ed 2d 62 (1965).)); *Taffe v. Smyth*, 62 Or 227, 241, 125 P 308 (1912) (referring to the concept of a "paper hearing").

In fact, petitioner concedes that, in the final accounting and accompanying statement of attorney fees, "detailed explanations for the questions previously raised by the trial court" were set forth in response to the court's December 7, 2009, letter opinion. The final accounting provided, *inter alia*, a "lengthy narrative of every task undertaken," a "detail[ed]" explanation as to "why this particular probate case was more complex than the amount of value at issue would otherwise suggest[,]" and billing records along with explanation "in great detail" of "the reasons for the time expended." The trial court then responded to that documentation in kind, providing specific reasons for its rejection of petitioner's requested award of attorney fees as detailed above. Unlike the situation in, for instance, *Nelson v. Emerald People's Utility Dist.*, 116 Or App 366, 377, 840 P2d 1384 (1992), *rev'd in part on other grounds*, 318 Or 99, 862 P2d 1293 (1993), upon which petitioner relies, this is not a case where "[t]he court could not have properly apportioned fees solely by examining the fee statement" and thus erred in failing to conduct an evidentiary hearing. *Id.*

In *Nelson*, the court was faced with apportioning attorney fees between the plaintiff's separate civil rights and contract claims. *Id.* at 376-77. We held that the documentation pertaining to attorney fees had "numerous entries for 'research' and other services described in such general terms that the court could not have ascertained which claim they related to without conducting an evidentiary hearing." *Id.* at 377. Conversely, here the trial court was presented with extremely detailed documentation pertaining to one matter alone, applied the factors set forth in ORS 116.183, and utilized its discretion to determine a reasonable amount of attorney fees without facing the complexities inherent in apportioning fees between two separate claims. *Nelson*,

like the balance of cases upon which petitioner relies, is thus inapposite as applied to the facts before us. *See, e.g., Morgan v. Goodsell*, 220 Or App 329, 185 P3d 1117 (2008) (trial court erred in failing to hold an evidentiary hearing "upon which to base an apportionment" of attorney fees between homeowner's association and specific members of that association where "the association offered no evidence to support its proposed apportionment"). We conclude that, although petitioner was not afforded a traditional, live "hearing," he was afforded sufficient opportunity (of which he availed himself) to present evidence and argument supporting his request for attorney fees. Accordingly, the trial court did not abuse its discretion in denying petitioner's request for a hearing.

For the foregoing reasons, we conclude that the trial court neither abused its discretion in awarding petitioner $9,500 in attorney fees nor in denying his request for a hearing on the matter. We therefore affirm.

Affirmed.